The State *v.* Conkling.

# THE STATE OF CALIFORNIA *v.* CONKLING.

THE Act of 1859, (Stat. 1859, 352) entitled "An Act to Provide for the Licensing of Auctioneers, and to Define their Duties and Liabilities," repeals or supersedes the forty-ninth, fiftieth, fifty-first and fifty-second sections of the Revenue Act of 1857, imposing a duty of one and one-half per cent. on the amount of sales of personal property at auction, etc.

This Act of 1859 is a complete, comprehensive and exclusive law, and prescribes all the duties and liabilities of auctioneers.

The Act of 1859 does not repeal these sections of the Revenue Act of 1857 by implication, as the rule is usually applied, but upon the principle that when the Legislature makes a revision of particular statutes, and frames a general statute upon the subject matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored.

Where a statute repeals or supersedes certain sections of a previous statute, a mere declaration in a still subsequent statute that the repealing statute *shall not repeal* these sections, is not a law reviving them or enacting them. There can be no law without a legislative intent that it become a law; and such intent must be manifested by language declaring the legislative will.

*Query:* Whether the Legislature can give such a retrospective effect to their acts.

APPEAL from the Fourth District.

Suit to recover moneys alleged to be due the State for the percentage on sales of personal property by auctioneers, under the Revenue Act of 1857. The complaint avers an indebtedness on the part of defendant for duties accruing on sales made by him between October 1st, 1859, and the institution of suit, May 4th, 1861. Defendant demurred upon the ground that the sections forty-nine to fifty-two, both inclusive, of the Act of 1857, relied on, had been repealed by the Act of April 18th, 1859.

The statutes in question are sufficiently set out in the opinion of the Court, excepting the sections of the Revenue Acts of 1860, 365, and 1861, 419, 457, to which allusion is made in the concluding paragraph.

These sections are section one hundred and one of the Act of 1860, which is : " The provisions of this act shall not apply to the city and county of San Francisco, but in the said city and county of San Francisco the Revenue Laws in force prior to and at the

time of the passage of this act, shall remain in full force and effect;" and section one hundred and two, which repeals all in conflict with the act, and then inserts several saving clauses and provisos, and, among them, this : " and provided, also, the rate of State taxes fixed by the first section of this act shall be the same in each and all of the counties in this State."

The Revenue Act of 1861 contains a section (Sec. 115) making the act inapplicable to San Francisco, and providing that " the Revenue Law in force prior to and at the time of the passage of this act, shall remain in full force and effect;" and also repealing the Revenue Acts of 1854, 1857 and 1860, and all amendatory acts. This section also makes the following exceptions to the repeal of these acts, to wit: 1st, the laws heretofore or now in existence in relation to the taxation or the collection of taxes on consigned goods; 2d, relating to passenger brokers; 3d, relating to foreign and inland bills and other matters—(April 29th, 1858) ; 4th, sections twenty-six to thirty-nine, or amendments of these sections, of the Revenue Act of 1854 ; 5th, sections forty-nine to fifty-two, inclusive, of the aforesaid Act of April 29th, 1857, or the amendatory sctions ; 6th, Act of April 19th, 1859, " amendatory of the aforesaid Act of April 29th, 1857, so far as the same applies to the city and county of San Francisco."

The sections forty-nine and fifty-two, inclusive, of the Act of 1857, are the same under which this suit is brought.

Defendant demurred. The demurrer was sustained, and plaintiff refusing to amend, final judgment was rendered for defendant, from which plaintiff appeals.

*Gregory Yale*, with the *Attorney General*, for Appellant.

I.   The Act of 1859 does not repeal sections forty-nine, fifty, fifty-one and fifty-two of the Revenue Act of 1857.

The Act of 1859 relates alone to the appointment and duties of auctioneers; while the Act of 1857 relates exclusively to the revenue for the support of the Government.

1. A general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent.   (Sedg. 124.)

The State *v.* Conkling.

2. But if a subsequent statute be clearly repugnant to a prior one, the latter is repealed, although it is not done in terms. (Id. 124.)

3. The law does not favor the repeal of statutes by implication. (*Sacramento* v. *Bird*, 15 Cal. 296 ; *Merrill* v. *Gorham*, 6 Id. 42 ; Sedg. 126–7 ; 6 Watts & S. 209 ; 2 Barb. 316 ; 6 Cush. 465.)

The true inquiry is, whether the Act of 1859 is clearly repugnant to the sections of the Act of 1857. It is evident that it is not : 1st, the subject is distinct ; 2d, the purpose is distinct ; 3d, the sums provided for as matters of revenue are different—one being nearly ten times greater than the other ; 4th, the disposition of the fund is different ; 5th, there is nothing whatever in common.

And this answers the rule relied upon in the argument, and which is not disputed, that when the Legislature undertakes to revise the whole subject or all the laws on the subject, and incorporates the provisions of all the old laws into one new statute, all the old statutes on that subject are treated as repealed. But here the whole subject was not revised, except so far as prescribes the mode of appointing auctioneers ; that relating to the revenue on sales was not touched upon at all.

Our own Court also furnishes the true rule on the use of a title to an act. Where the meaning of the body of an act is doubtful, the title may be resorted to as a means of ascertaining the intention of the Legislature ; but the title cannot be used to restrain or control any positive provision of the act. (*Flynn* v. *Abbott*, 16 Cal. 358.) The title cannot be resorted to, to prove the repeal of a form or statute. And if the body of the act is doubtful, then no repeal can be upheld by implication, because the repugnancy must be clearly manifest. The repugnancy of the Act of 1859 to sections fourteen to eighteen, inclusive, is manifest. It is the same subject differently treated—a change is introduced in the law. And here the repugnancy ceases.

The Revenue Act of the nineteenth of April, 1859, one day later than the act in question, settles this controversy. It amends certain sections of the Act of 1857, repeals certain others, and necessarily leaves all the rest in 'force, and among them sections forty-nine and fifty-two. No express repeal can be contended for, as the repeal goes only to the acts " in conflict."

The State *v.* Conkling.

*Hoge & Wilson, H. P. Hepburn* and *John W. Dwinelle,* for Respondent.

I.   The Act of the eighteenth of April, 1859, by its own terms, expressly repeals the sections of the Act of 1857, imposing a duty of one half of one per cent. upon the amount of auction sales.

The only laws supposed to be in existence upon the subject, the Revenue Act of 1854, the Act amendatory of that Act of April 29th, 1857, being the act relied upon by the plaintiff, and the Act of 1850, in relation to auctioneers, are directly referred to in the repealing clause, section fifteen, and rights vested or liabilities incurred prior to the passage of the act, under or by virtue of the provisions of either of them, are withdrawn from the operation of the repeal.    This direct reference is, in many of the authorities, as in *Merrill* v. *Gorham,* (6 Cal. 42) considered evidence of the intention to repeal.    The section concludes by providing that the repeal of the laws referred to should not affect the right of recovery in any suits now (then) pending against auctioneers for violations of the provisions of any of said acts.

This is a cotemporaneous legislative construction of the Act of 1859, made in the act itself, and by the same Legislature which passed it, and a declaration that, without that saving clause, those " rights and liabilities," and rights of recovering in suits then pending, would have been lost and repealed by the passage of the law of 1859.

For if a statute giving jurisdiction, a right of action, or vesting a civil right, or declaring or defining a crime, is repealed, then the jurisdiction, the right of action, the civil right, the crime and its punishment, are all destroyed.    (*Butler* v. *Palmer,* 1 Hill, 325, 330, 332, 334; *Yeaton* v. *The United States,* 5 Cranch. 281; 2 Cond. R. 257; Cases cited *arguendo, Norris* v. *Crocker,* 13 How. 436.)    And so complete is this repeal that the judgment will be arrested even after verdict, or a convict discharged after conviction. (Anon. 1 Wash. C. C. R. 84; *Lewis* v. *Foster,* 1 N. H. 61.)

II.   But even if there were no express repeal of the Statute of 1857, by the statute of 1859, yet the statute of 1857 was repealed by implication by the passage of the statute of 1859.

Repeal by implication is in two cases : 1st, when the latter stat-ute is clearly repugnant to the former one.   ( *Williams* v. *Pritch-ard*, 4 D. & E. 2 ; Dwarris, 514 ; *Williams* v. *Williams*, 4 Seld. 526 ; *Lyn* v. *Wyn*, Bridgman's Judgments, 122 ; *Darcy's case*, Cro. Eliz. 512 ; *Paget* v. *Foley*, 2 Bing. N. C. 679 ; *R.* v. *Pugh*, 1 Dougl. 188.)   2d. Even if the subsequent statute be not repug-nant in all its provisions to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act.   (*Davis* v. *Fair-bairn*, 3 How. 636.)   So on the same principle a statute is im-pliedly repealed by a subsequent one, revising the whole subject matter of the first.   (*Bartlett* v. *King*, 12 Mass. 555, 563 ; *Nich-ols* v. *Squire*, 5 Pick. 168, 169 ; *Dexter Plank Road Co.* v. *Allen*, 16 Barb. S. C. 15 ; *Ellis* v. *Page*, 1 Pick. 45 ; *Pulaski County* v. *Downer*, 5 Eng. 588 ; *Eaton* v. *Graham*, 11 Ill. 622 ; *The Commonwealth* v. *Cooly*, 10 Pick. 39 ; *Sacramento* v. *Bird*, 15 Cal. 294 ; *Pierpont* v. *Crouch*, 10 Id. 316.)

III.  And that this statute of 1859 was intended to revise the whole law in relation to auctioneers, and to reduce the same to a single system, embraced in a separate law, is apparent.

1. By the title of the act, which in case of doubt as to the intent of the act may be referred to.   (Dwarris, 502 ; *United States* v. *Palmer*, 3 Wheaton, 610, 5 Cond. R. 359 ; *Flynn* v. *Abbott*, 16 Cal. 365 ; *United States* v. *Fisher*, 2 Cranch. 421, 1 Cond. R. 423.)

If this explanatory effect be attributed to the title of an act, on general principles, much stronger is the effect under the provisions of article four, section twenty-five of the Constitution of California, which provides that " every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title." It is true that the Supreme Court have decided in *Washington* v. *Page* (4 Cal. 388) that " this provision is merely directory, and does not nullify laws passed in violation of it ;" but they have not decided that when the Legislature have complied with this consti-tutional provision, which it was their duty to observe, that the title shall not be presumed to express the sense and intent of the Legis-lature.   Now the title of the Act of 1859 is : "An Act to Provide

33

for Licensing of Auctioneers, and to Define their Duties and Liabilities." (Laws of 1859, 352.) Not a portion of their duties and liabilities, but all their duties and liabilities.

2. That such was the operation and intention of the act seems clear from an examination of its various provisions. The subject of auctioneers, their duties and liabilities, from 1853 down to the passage of the act in question, had been regulated under a distinct title in the General Revenue Laws. These titles embraced the whole subject, and had long superseded the old auction law of 1850. They constituted an entire system under which the whole law of auctioneers was to be found. Their appointment, bonds, licenses, duties and responsibilities, of every name and nature, were here provided for. In 1859 the Legislature again, to take up the subject of auctioneers, and returning to the old system of 1850, incorporate in one statute the whole body of the law, intended thenceforth to constitute the whole policy of the State in relation to auctioneers. The law itself bears internal evidence of this intention.

It proceeds section by section, and reënacts all the old law, with such changes, additions and amendments as were thought desirable, and concludes with the repealing of all acts or parts of acts conflicting with the provisions of the act.

The Legislature seem to have provided for the entire subject matter, and to have conclusively marked their design that the Act of 1859 should thenceforth be the law governing auctioneers. That in this law should be found their whole duties and their whole responsibilities. Another significant circumstance is, that this system of basing the amount of license tax upon the monthly business, is carried into all the succeeding Revenue Laws—those of 1860 and 1861. Those laws, after the Act of 1859, drop all mention of auctioneers except as before mentioned.

IV. If the law of 1857 had not been repealed by the law of 1859, it would still have been repealed by the " Act to Provide Revenue for the Support of the Government of this State," passed April 30th, 1860. (Laws of 1860, 365.)

That law contains a general repealing clause, which reaches the subject matter of sections forty-nine, fifty, fifty-one and fifty-two

(regulating auctioneers' duties) in the Revenue Law of 1857. (Laws of 1857, 341.) The two acts are *in pari materia.* The title of each is "An Act to Provide Revenue for the Support of the Government of this State." It is true that section one hundred and one of the Act of 1860, 401, contains the following provision:

" SEC. 101. The provisions of this act shall not apply to the city and county of San Francisco, but in the said city and county of San Francisco the revenue laws in force prior to, and at the time of the passage of this act, shall remain in full force and effect."

Now, if it were conceded that the auction laws of 1857 were still in force when this law of 1860 was passed, and were attempted to be retained by this section one hundred and one in San Francisco, and abolished as they undoubtedly were everywhere else in the State, then this section one hundred and one would be unconstitutional under article eleven, section thirteen of the Constitution of California, which provides that " taxation shall be equal and uniform throughout the State." For the " duty of half of one per cent.," provided by section forty-nine of the Revenue Law of 1857, 341, is a tax. (Bouv. Law Dic. tit. Duty, Tax ; *Pike* v. *The State,* 5 Pike, 204.) *A fortiori,* taxing goods sold in San Francisco, and not taxing goods sold in the same way elsewhere. ( *Campbell* v. *Union Bank,* 6 How. Miss. 625 ; *Golden* v. *Prince,* 3 Wash. C. C. R. 313.) Doubtless the Legislature can impose an auction tax which shall be equal throughout the State, but not an auction tax for the city and county of San Francisco alone.

But the last section of the Act of 1860, 401, enacting " that the rate of State taxes provided by the first section of this Act shall be the same in each and all of the counties of this State," *i. e.* sixty cents on the hundred dollars, and at the same time retaining the passenger tax and tax on consigned goods, shows that there was no attempt to retain an auction tax.

Section one hundred and one of the Act of 1860 must therefore be construed only as retaining in the city and county of San Francisco its machinery for collecting the revenue, which is peculiar, and is based upon the radical differences which exist between large cities and smaller communities, or agricultural or mining districts. See the law, (Ch. 315, Laws of 1859, 343) which provides the mode of collecting revenue in San Francisco.

Where two statutes are repugnant, the later statute will stand and be held to repeal the other; where two sections of the same statute are in conflict, " the last words stand," and others which " cannot stand with them, go to the ground." (*Brown* v. *County Comm.*, 21 Penn. 37.)

V.   Effect of the Revenue Law of 1861.   (Laws of 1861, 419, 457.)   If referred to the repealing clause of the Revenue Law of 1861, (Sec. 115, 456) we reply: 1st. That no opinion is expressed on the subject.   The utmost that can be inferred is, the Legislature did not wish to touch the question of auction duties or auction licenses, for the existing system of auction licenses is a substitute for those sections, and thus in effect an amendment of them, for there is no other amendment save the law of 1856 repealing section nineteen of the law of 1854, *et supra ;* and if there had not been this saving clause, this Act of 1861 would have repealed the saving clause in the auction law of 1859, and so the suits then pending for duties accrued before 1859, under the law of 1857, would have fallen and could no longer have been prosecuted.

2d.   Those sections of the law of 1857 being in fact repealed by the law of 1859, so far forth as subsequent auction duties under it were concerned, the saving them from repeal by the Act of 1861, if such an effect was intended, must be considered as improvident, and the result of a mistake on the part of the Legislature, and so will have no effect.   (*Ashley's case*, 4 Pick. 23.)

3d.   That a subsequent Legislature has not the power to give a retrospective operation to a law by a legislative construction.   That function belongs solely to the Courts, and not to the Legislature. (Sedg. Stat. Law, 253.)

4th.   The rule at common law was, that the repeal of a repealing statute revived the original law.   (*Case of the Bishops*, 12 Co. 7, 2 Inst. 686 ; *Doe* v. *Naylor*, 2 Blackf. 32 ; *Wheeler* v. *Roberts*, 7 Cow. 536 ; *Finch* v. *McDowall*, Id. 537 ; *Commonwealth* v. *Churchill*, 2 Met. 118 ; *Gale* v. *Mead*, 4 Hill, 109.)   But here the repeal of a repealing act does not, without express words to that effect, revive the original law.   (Laws of 1853, Chap. 27, p. 40.) And it cannot be pretended that the Legislature can revive by the expression of a mere opinion, a repealed law which it requires an express act of the Legislature to revive.

[For a full history of the legislation of the State respecting auctioneers, see briefs of the respective counsel on file.—REP.]

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The question in this case is, as to the construction and effect of the Act of 1859 (Stat. 352) entitled " An Act to Provide for the Licensing of Auctioneers, and to Define their Duties and Liabilities." It is contended that this act repeals or supersedes the forty-ninth, fiftieth, fifty-first and fifty-second sections of the Act of 1857, (Stat. 325) entitled "An Act to Provide Revenue for the Support of the Government of this State." These sections, except the first, were commented upon in the case of the *State* v. *Poulterer* (16 Cal. 521). They impose a duty of one half of one per cent. on the amounts of sales of personal property at auction, and provide the means for the collection and payment of the tax by the auctioneer. It is not pretended that there is any express repeal in the Act of 1859 of these sections of the Act of 1857; but the argument is, that the Act of 1859 is a complete, comprehensive and exclusive law as to all the duties and liabilities of auctioneers, and that it furnishes the evidence of the legislative will, that whatever is enjoined therein shall prevail, and whatever was not enjoined was designedly omitted. In other words, that the Act of 1859 is a complete and formal system of itself, prescribing the whole duties and liabilities of auctioneers. It is true that the title of the Act of 1859 and that of the Act of 1857 are not the same, nor are the subjects covered by those titles identical; but not much consideration is due to this circumstance, from the fact that the subject of auctioneers and their licenses and duties are so interwoven with the general Revenue system as almost to require some reference to auctioneers and auction sales in the general Revenue bills. Indeed, it seems from the history of the subject, that the general matter of auctions and auctioneers has been treated by the Legislature, in a great measure, through and as a part of the various Revenue bills, original and amendatory, which from time to time have been passed.

The Act of 1859 seems designed as a compilation or revision, with amendments, of former laws on the subject of auctioneers.

The State *v.* Conkling.

The first section provides that any citizen may become an auctioneer for the county in which he resides, on giving bonds, and on payment of the license thereafter provided.    The second section prescribes the condition of the bond, its amount, ($5,000) how approved, filed, etc.    The third section prescribes that the Controller of State shall cause to be printed a sufficient number of licenses, etc., to be furnished County Treasurers, etc.    Section four prescribes: "Any person who shall have filed his bond in accordance with the provisions of this act, shall, upon payment of the sum specified in this section, receive from the County Treasurer a license of the class for which he has paid ; said license shall be renewed quarterly, and rated as follows :

First Class.    Auctioneers whose average monthly sales shall amount to $100,000 and upwards shall constitute the first class, and shall pay a license of four hundred dollars per quarter.

Second Class.    Auctioneers whose average monthly sales shall amount to $75,000 and less than $100,000 shall constitute the second class, and pay a license of three hundred dollars per quarter.

Third Class.    Auctioneers whose average monthly sales shall amount to $50,000 and less than $75,000 shall constitute the third class, and pay a license of two hundred dollars per quarter.

Fourth Class.    Auctioneers whose average monthly sales shall amount to $30,000 and less than $50,000 shall constitute the fourth class, and pay a license of one hundred and twenty-five dollars per quarter.

Fifth Class.    Auctioneers whose average monthly sales shall amount to $20,000 and less than $30,000 shall constitute the fifth class, and pay a license of one hundred dollars per quarter.

Sixth Class.    Auctioneers whose average monthly sales shall amount to $10,000 and less than $20,000 shall constitute the sixth class, and pay a license of sixty dollars per quarter.

Seventh Class.    Auctioneers whose average monthly sales shall be less than $10,000 shall constitute the seventh class, and pay a license of twenty-five dollars per quarter.

Section five provides: " No section of this act shall be so construed as to require a license to be obtained for the selling of any

goods at public sale that may belong to the United States or to this State, or upon property sold by virtue of any process issued by any State Court or United States Court."

Section six provides : " Every auctioneer applying to the County Treasurer for a renewal of his license under the provisions of [this] act, shall accompany the application with a statement, under oath, which shall set forth that his average receipts per month, on account of sales during the preceding quarter, do not exceed the amount specified, etc." Various other provisions are made, some of them going into small details, as in the tenth section.

Section fifteen is as follows : "All acts or parts of acts conflicting with the provisions of this act· are hereby repealed ; *provided,* that such repeal shall not in any manner affect any rights vested or any liabilities incurred prior to the passage of this act, under or by virtue of the provisions of the act passed May 15th, 1854, entitled 'An Act to Provide Revenue for the Support of the Government,' and an act entitled 'An Act to Provide Revenue for the Support of the Government of this State,' approved April 29th, 1857, and an act entitled 'An Act Prescribing the Mode of Appointing Auctioneers and Defining their Duties,' passed April 22nd, 1850, nor affect the rights of recovering in any suits now pending against Auctioneers or violators of the provisions of any of said acts."

No mention is made of the tax of one-half per cent. ; but on the contrary, in the proviso to the fifteenth section is a saving of rights vested or liabilities incurred prior to the passage of the act, from which it would seem the Legislature contemplated that other provisions of the old Revenue Acts affecting auctioneers were not to be continued in operation.

The object of all construction of statutes is to get at, and give effect to, the intention of the Legislature. It is not necessary that this intention should be manifested by apt and unambiguous terms, or that it should appear by express words. From the body of an act and its general scope and spirit, and by looking at the circumstances in the mind of the Legislature, we frequently gather the intended meaning of their acts. It would strike a plain man with surprise, if told that the Legislature had industriously compiled a statute, proceeding to minute details on the general subject of the

rights, duties and obligations of a class of persons, and had omitted to incorporate a former provision of law touching this subject, and yet that this omission was designed, or had the effect, to include the omitted provision ; especially here, when we see proof of caution and care to frame a complete system, and to guard against inferences of omission of other portions of laws by an express saving of them.   The title of the act, which may be considered to determine its intent, (*Flynn* v. *Abbott*, 16 Cal.) when taken in connection with the general scope and particular clauses of the act, is decisive to show that the Legislature meant to prescribe the duties and liabilities contained in the act as those alone obligatory upon auctioneers.   Strength is added to this view by the clause of the proviso, declaring that the repeal of the laws referred to in the fifteenth section as those conflicting with the provisions of the Act of 1859, should not affect any suits *now pending* for a violation of the sections of the Act of 1857, etc., which it is *now* contended are still in force.

We do not consider that the rule applicable here is, that this is a repeal by implication as that rule is usually applied ; but the principle is, that when the Legislature makes a revision of particular statutes, and frames a general statute upon the subject matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored.   It was upon this principle that the case of *Sacramento* v. *Bird* (15 Cal. 294) was decided. There the Consolidation Act of Sacramento county gave to the Treasurer a salary ; *the general law* allowed the Treasurer a percentage on moneys paid into the State Treasury ; we held that he was only entitled to his salary.   Mr. Justice Cope, delivering the opinion of the Court, used this language, which we think correctly gives the rule : " It is impossible to avoid the conclusion that this salary is in lieu of the per cent. previously allowed, and was not intended as additional compensation to the Treasurer. It is true, the law does not favor the repeal of statutes by implication, but it is not true that a statute, without negative words, will in no case repeal the provisions of a former one, unless the two acts are directly

repugnant and inconsistent.   Every statute must be considered according to what appears to have been the intention of the Legislature, and even though two statutes relating to the same subject be not in terms repugnant or inconsistent, if the latter statute was clearly intended to prescribe the only rule which should govern in the case provided for, it will be construed as repealing the original act.   (Sedg. on Const. and Stat. Law, 124.)   So far as this case is concerned, we think there is no difficulty in arriving at the intention of the Legislature.   The language of the act is plain and unequivocal, and the meaning clearly is, that the entire compensation shall be $3,000 per annum."

This doctrine of construction not only commends itself by its plain sense and justice, but is sanctioned by numerous authorities. (Sedg. on Const. and Stat. Law, 124, and the cases cited in respondent's brief.)   See also *Pierpont* v. *Crouch*, (10 Cal. 316) in which case the authorities are collected in the opinion of the present Chief Justice.

It is not necessary to consider the effect of the Revenue Acts of 1860 and 1861 ; for, if we are right in supposing the Act of 1859 a repeal of or as superseding the quoted section of the Act of 1857, it is very obvious that a mere legislative declaration that that act *shall not repeal* these sections is not a law reviving them or enacting them, even if the Legislature could give such retrospective effect to their acts ; but there can be no law without a legislative intent that it become such ; and such intent must be manifested by language declaring the legislative will.

It is not necessary to notice other points.

Judgment affirmed.