[S. F. No. 2117.   Department One.—June 17, 1902.]

F. M. SPONOGLE, Appellant, v. J. R. CURNOW et al., Board of Managers of Agnews State Hospital, Respondents,

INSANITY LAW—REVISED SYSTEMS—CODE PROVISIONS SUPERSEDED.—The Insanity Act of 1897 was intended by the legislature as a complete revision and substitute for all previous acts relating to the same subject-matter, and to supersede the provisions of the Political Code relating to that subject-matter which were omitted from the revisory act.

ID.—STATE HOSPITAL—POWER OF MANAGERS—APPOINTMENT AND REMOVAL OF MEDICAL SUPERINTENDENT—CONSTITUTIONAL LAW.—No term of office of the medical superintendent of a state hospital being fixed by the act of 1897, the board of managers thereof has power, under section 10 of article XX of the state constitution, to appoint and remove such superintendent at their pleasure; and the provisions of that act requiring the removal of such superintendent only for cause, upon charges preferred, and after opportunity for hearing, being in conflict with that section of the constitution, are of no effect.

APPEAL from a judgment of the Superior Court of Santa Clara County.   M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

H. V. Morehouse, and F. J. Hambly, for Appellant.

Tirey L. Ford, Attorney-General, and William M. Abbott, Deputy Attorney-General, for Respondents.

VAN DYKE, J.—This was an application for a writ of
*certiorari* to review the action of the board of managers of
the Agnews State Hospital in removing the petitioner, Dr. F.
M. Sponogle, as medical superintendent thereof.  From the
return to the writ, containing a transcript of the proceedings
of said board, it appears that the petitioner was appointed
superintendent April 23, 1897; that at a meeting of said board
August 23, 1899, in response to a call or direction by the
governor of the state, the said board of managers deposed said
Sponogle and declared the office held by him vacant, and
thereafter, on the same day, elected or appointed Dr. J. H.
Crane as his successor in said office.  The superior court of
Santa Clara County, in which said proceedings were had, upon
the return to the writ affirmed the action of the board of man-
agers, and dismissed the writ.  From this judgment the plain-
tiff appeals.

The appellant urges a reversal of the judgment of the court
below mainly upon two grounds: 1. That the Insanity Law
of 1897, so-called, requires that he shall be removed only for
cause, upon charges preferred, and after an opportunity given
for a hearing; and 2. That the term of office of medical super-
intendent of Agnews State Hospital was four years from and
after the date of his appointment, and that said term had not
expired when he was removed.

Respondents meet the first point made by the appellant
with the contention that the portion of the law which re-
quires that the cause for removal must be stated in writing and
served upon the officer charged, and who must be given an
opportunity to be heard is unconstitutional and of no effect.
Section 16 of article XX of the constitution reads: ''When
the term of any officer or commissioner is not provided for in
this constitution, the term of such officer or commissioner may
be declared by law; and if not so declared, such officer or
commissioner shall hold his position, as such officer or com-
missioner, during the pleasure of the authority making the
appointment; but in no case shall such term exceed four
years.''  The Insanity Law of 1897 does not fix or declare the
term of office of the medical superintendent, and therefore it
is contended on the part of respondents that the tenure of the
office under the constitution is expressly made subject to the
pleasure of the appointing power.  The constitution of 1849

contained a similar provision to the one quoted from the present constitution, and in *People* v. *Hill*, 7 Cal. 97, this question was fully considered and determined in favor of the contention of the respondents here. The court there says: "Two propositions are involved in this case: 1. The authority of the appointing power to remove an officer, when the term of office is not fixed by law; and 2. The constitutionality of the act consolidating the city and county government of San Francisco." Then after quoting the provision of the old constitution, being similar to the present, the court continues: "When, therefore, the time of holding is not fixed, the tenure of the office is at the pleasure of the appointing power. This power of removal cannot be divested or taken away, except by limiting the term. A law which provides that an officer may be removed in a certain way, or for a certain cause, does not restrain or limit the power of removal to the cause or manner so indicated. The power to remove is an incident to the power to appoint, as a general proposition, and is made so expressly by the constitution. The only way in which this power of removal can be limited is by first fixing the duration of time of office, and then providing the mode, if deemed necessary, by which the officer may be removed during the term. A law which simply provides that a party shall not be removed, except in a given case, where the duration of the office is not declared, would, in our opinion, be unconstitutional." *Smith* v. *Brown*, 59 Cal. 673, was a case involving the removal of a police officer of the city of Sacramento by the police commissioners thereof. The plaintiff therein claimed that by reason of a provision in the statute he was appointed during "good behavior," and therefore the board had no power to remove except upon charges preferred, and after a trial and hearing. A judgment of the lower court against this contention, and in favor of the defendant, was affirmed by this court upon the authority of *Smith* v. *Hill*, 7 Cal. 97. A similar question arose in *Higgins* v. *Cole*, 100 Cal. 260, involving the removal of a chief of the fire department by the board of trustees, wherein it was held that there being no term fixed, the officer held at the pleasure of the appointing power, and could be removed without cause.

Under the claim that the term of office of medical superintendent of Agnews State Hospital was fixed at four years, the

appellant relies upon section 2151 of the Political Code. To
meet this contention respondents maintain that the act of
1897 was revisory in its nature and superseded all the former
acts and code provisions in reference to the asylums for the
insane. The title of the act of 1897 reads: "An act to estab-
lish a state lunacy commission, to provide a uniform govern-
ment and management of the state hospitals for the insane,
and to provide for the care, custody, and apprehension of
persons believed to be insane, and the commitment of insane
persons, and providing for the transfer of unexpended appro-
priations of money and properties." The first section declares
that the act shall be known as the Insanity Law. And by the
act a state commission in lunacy is created, charged with the
execution of the laws relating to the care, custody, and treat-
ment of the insane, and is given general supervision over all
the state hospitals for the insane. It also, as it were, re-
creates the various state asylums for the care and treatment
of the insane, and provides that all the property and moneys
are to be transferred from the old to the new institutions
thereby created, and changes the names of all such institu-
tions from asylum to that of state hospital. Each state hos-
pital is to be under the control of a board of managers, with
power to appoint the medical superintendent and other neces-
sary officers for the same, and generally to supervise and
manage such hospital, such powers and duties being uniform
throughout the different hospitals. It also provides for the
manner and mode of the commitment of the insane of the
state to the various hospitals, and their support therein. The
first insane asylum was established at Stockton by an act of
1853, and thereafter one was established at Napa, in 1872, and
another at Agnews, in 1885, and one in Southern California,
at Highlands, near San Bernardino, in 1889, and also one in
Mendocino County, in 1889, each one by a separate statute
and designated by a separate name. When the provision in
reference to the insane asylums was inserted in the code only
the one at Stockton was in operation, and the provision is in
terms limited to that asylum. We think it is apparent that
the Insanity Law of 1897 was intended by the legislature as
a complete revision and substitute for all previous acts relat-
ing to that subject-matter, and the object of all construction
of statutes is to get at and give effect to the intention of the

legislature. The title of the act, as well as all of its provisions, would strike any one as being intended to cover the whole subject of the care and management of the insane and the institutions provided for them in the state, including the appointment or election of the various officers required to take care of and manage each hospital therein designated. It would be unreasonable to suppose that the legislature intended that the whole title and article of the Political Code in reference to insane asylums should be repealed or superseded, excepting section 2151 in said article, and that alone should remain. Although an act or part of an act may not be repealed expressly or by necessary implication, still a revision of the whole subject-matter covering said act would supersede all such portions as were omitted from the revisory act. In *State* v. *Conkling,* 19 Cal. 501, in discussing this subject, the court say: "We do not consider that the rule applicable here is, that this is a repeal by implication, as that rule is usually applied; but the principle is, that when the legislature makes a revision of particular statutes, and frames a general statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored." In *Murdock* v. *Mayor of Memphis,* 20 Wall. 590, the supreme court of the United States in passing upon the same question in reference to an act of Congress, say: "We are of the opinion that it was their intention to make a new law so far as the present law differed from the former, and that the new law, embracing all that was intended to be preserved of the old, omitted what was not so intended, became complete in itself, and repealed all other laws on this subject embraced within it." In *Dillon* v. *Bicknell,* 116 Cal. 111, this court in discussing a similar question says: "Wherever it clearly appears that the intention of the legislature by the later act is to revise the entire subject-matter of the former, the subsequent act operates as a repeal of the former, although it contains no precise words to that effect." And Sedgwick on Statutory Law (p. 124) says: "Even if a subsequent statute be not repugnant in all its provisions to a prior one, yet if the later statute was clearly intended to prescribe the only rule which should govern in the

case provided for, it repeals the original act." (See, also, *Treadwell* v. *Yolo Co.*, 62 Cal. 564; *Charnock* v. *Rose*, 70 Cal. 192; *Hanley* v. *Sixteen Horses, etc.*, 97 Cal. 183.)

The position of respondents is correct and is supported by authority.

Under our theory of government there is no property right in an office; offices are created to subserve the public interests, and not for the benefit of the occupant thereof, and where the term is not fixed by law there is no reason why the power to appoint should not also possess the power to remove at pleasure, and such, as shown, has been the practice.

Judgment affirmed.

Garoutte, J., and Harrison, J., concurred.