[Civ. No. 1497.    Second Appellate District.—April 5, 1915.]

HARRY L. SUYDAM, Appellant, v. THE LOS ANGELES RAILWAY COMPANY (a Corporation), Respondent.

STREET-RAILROAD CORPORATIONS—RATES OF FARE—EFFECT OF CODE AMENDMENT—REPEAL OF ACT OF 1878.—The act of 1878 limiting and fixing the rates of fares on street-railroads in cities of more than one hundred thousand inhabitants to five cents for each passenger per trip of any distance in one direction along any part of the whole length of the road or its connections and providing for the recovery of a penalty for any charge made in excess of such amount, was superseded by the amendment of 1903 to section 501 of the Civil Code, which amendment consisted in adding to the original section which provided that the rates of fare on the cars of street-railroad corporations should not exceed ten cents for one fare for any distance under three miles, the words "and in municipal corporations of the first class must not exceed five cents for each passenger per trip of any distance in one direction, either going or coming, along any part of the whole length of the road or its connections."

ID.—STATUTORY CONSTRUCTION—REPEALS BY IMPLICATION.—While it is true that repeals by implication are not favored, whenever it becomes apparent that a later statute is revisory of the entire matter of an earlier statute, and is designed as a substitute for it, the later statute will prevail, and the earlier statute will be held to have been superseded, even though there be found no inconsistencies or repugnancies between the two.

ID.—REGULATION OF STREET-CAR FARES—EFFECT OF PUBLIC UTILITIES ACT.—The provision of the Public Utilities Act concerning the regulation of street-car fares within the corporate limits of cities has no application to those cities which have reserved the right of control upon the subject as provided by section 82 of the act.

APPEAL from a judgment of the Superior Court of the County of Los Angeles. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

M. O. Graves, and Cole & Brown, for Appellant.

O'Melveney, Stevens & Millikin, and Gibson, Dunn & Crutcher, for Respondent.

CONREY, P. J.—In this action the plaintiff seeks to recover certain penalties to which he claims to have become entitled under the provisions of ''an act to limit and fix the rates of fares on street-railroads in cities of more than 100,000 inhabitants,'' approved January 1, 1878 (Stats. 1877–78, p. 18). Judgment was entered in favor of the defendant after an order sustaining its demurrer to the complaint. From this judgment the plaintiff appeals.

Section 1 of the act of 1878 reads as follows: ''No street-railroad in any city or town of this state with more than 100,000 inhabitants, shall be allowed to charge or collect a higher rate of fare than five cents for each passenger per trip of any distance in one direction, either going or coming, along any part of the whole length of the road or its connections.'' The next section provides: ''Every violation of the provisions of section 1 of this act shall subject the owner or owners of the street-railroad violating the same to a forfeiture to the person so unlawfully charged, or paying more than is therein allowed to be charged, the sum of two hundred and fifty dollars for each and every instance when such unlawful charge is made or collected, to be recovered by suit in any court of competent jurisdiction; such causes of action shall be assignable, and the action may be maintained by the assignee in his own name, and several causes of action arising out of unlawful charges or collections from different persons may be vested in the assignee and united in the same action.'' If this act was in force in May, 1912, when the alleged charges of ten cents per trip were made, the plaintiff's complaint stated a cause of action, and the demurrer was improperly sustained.

Section 501 of the Civil Code, as adopted in 1872, provided as to street railroad corporations that ''the rates of fare on

the cars must not exceed ten cents for one fare for any distance under three miles, . . . A violation of the provisions of this section subjects the corporation to a fine of one hundred dollars for each offense.'' Section 504 of the Civil Code, also enacted in 1872, says: ''Any corporation, or agent or employee thereof, demanding or charging a greater sum of money for fare on the cars of such street-railroad than that fixed, as provided in this title, forfeits to the person from whom such sum is received, or who is thus overcharged, the sum of two hundred dollars, to be recovered in a civil action, in any justice's court having jurisdiction thereof, against the corporation.''

In the year 1903, [Stats. 1903, p. 172], section 501 of the Civil Code was re-enacted in amended form, and the amendment, so far as applicable here, consisted in adding certain words to the first sentence of the section so that the same reads as follows: ''The rates of fare on the cars must not exceed ten cents for one fare for any distance under three miles, *and in municipal corporations of the first class must not exceed five cents for each passenger per trip of any distance in one direction, either going or coming, along any part of the the whole length of the road or its connections.''*

The alleged excessive charges to plaintiff were made in the city of Los Angeles. According to the census of the year 1900, the city of Los Angeles had a population of 102,479; and according to the census of 1910 it had a population of 319,189. In 1901 (Stats. 1901, p. 94) an act was adopted for the classification of cities in California whereby these cities having a population of more than 200,000 constituted the first class, and those having a population of more than 100,000 and not exceeding 200,000 constituted the first and one-half class. By a similar act of 1911 (Stats. 1911, p. 476), all cities having a population of more than 400,000 constitute the first class, and those having a population of more than 250,000 and not exceeding 400,000 are in the first and one-half class. It thus appears that at the time of the adoption of the 1903 amendment to section 501 of the Civil Code the city of Los Angeles was, and in May, 1912, it was and ever since has been, a city of the first and one-half class; and not until the census of 1900 was it established as a city of more than 100,000 inhabitants.

From the foregoing facts it further appears that the above quoted act of 1878 did not apply to the city of Los Angeles until the year 1900. From that time until the present (except for a few months between the time of taking the 1910 federal census and the time when the reclassification act of 1911 became effective), it has been applicable to that city, if the act itself is still in force.

It should be noted that the words describing the five-cent fare limit as added to section 501 by the act of 1903 are identical with the corresponding part of section 1 of the act of 1878; that is to say, "five cents for each passenger per trip of any distance in one direction, either going or coming, along any part of the whole length of the road or its connections." But, whereas, the five-cent limit described in the act of 1878 is made applicable to cities "with more than one hundred thousand inhabitants," the words used in the amendment to section 501 are, "in municipal corporations of the first class." It is reasonable to assume that the legislature in enacting this kind of an amendment to the statutory law has in view the conditions existing as to population and classification in the several cities of the state. If it had been intended merely to codify the act of 1878 by transferring section 1 thereof into section 501 of the Civil Code, the words, "with more than one hundred thousand inhabitants," would have been transferred, instead of substituting the words, "in municipal corporations of the first class." That this amendment was made for the purpose of codifying and at the same time amending the earlier statute is sufficiently clear from the identity of the subject-matter and from the duplication of language as to the rate of fare prescribed and the change in phraseology as to description of the kind of corporation in which the rule prescribed is made applicable. This reasonable view of the matter is further confirmed by the history of the legislation and the fact that section 501, as amended in 1903, is in the same language as the amendment proposed by the code commissioners, which the legislature attempted to adopt by an act passed in 1901, which act, however, on account of the insufficiency of its title, was declared to be void. The report of the code commissioners, whose recommendations were followed by said act of 1901, plainly shows that the purpose of the proposed amendment was to transfer into the Civil Code, with some amendment, the legislation contained

in the act of 1878. While this historical matter is not at all conclusive, yet it is somewhat persuasive when it coincides, as it does, with the natural reason of the matter.

Having thus considered the foregoing several steps in legislation, together with the conditions to which they were intended to apply, we are led to the conclusion that section 501 of the Civil Code, as amended in 1903, together with the already existing section 504 of the Civil Code, was intended as a substitute for the act of 1878, as well as for the original section 501. "While it is true that repeals by implication are not favored, whenever it becomes apparent that a later statute is revisory of the entire matter of an earlier statute, and is designed as a substitute for it, the later statute will prevail, and the earlier statute will be held to have been superseded, even though there be found no inconsistencies or repugnancies between the two." (*Mack* v. *Jastro,* 126 Cal. 130, 132, [58 Pac. 372, 373].)

It is further contended by respondent that whatever provisions of law existed by virtue of any of the foregoing statutes were superseded by the Public Utilities Act, which became effective on the 23d day of March, 1912. (Stats. 1911, (Ex. Sess.,) p. 18.) Section 27 of that act states a general rule concerning street car fares within the corporate limits of cities. Section 73a provides a rule of damages to be recovered in civil actions on account of violations by any public utility of the provisions of the constitution or any law of this state or any order or decision of the railroad commission. Section 76a provides for penalties to be recovered on account of violations of the provisions of the constitution of this state or of said Public Utilities Act. Section 87 declares that "all acts or parts of acts inconsistent with the provisions of this act are hereby repealed." Respondent's position as to the result of the Public Utilities Act as affecting earlier statutes is not seriously disputed as to its general effect. But it is claimed by appellant that the provisions of said act are not applicable to the city of Los Angeles, and that therefore the act of 1878 (assuming it to have survived the 1903 amendment of section 501 of the Civil Code), remains in force within that city.

Section 82 of the Public Utilities Act (closely following section 23 of article XII of the constitution as amended October

27 Cal. App.—11

10, 1911), in part reads as follows: "This act shall not affect such powers of control over any public utility vested in any city and county or incorporated city or town as, at an election to be held pursuant to laws to be hereafter passed by the legislature, a majority of the qualified electors voting thereon of such city and county, or incorporated city or town, shall vote to retain, and until such election such powers shall continue unimpaired in such city and county or incorporated city or town." In March, 1911, the city of Los Angeles by virtue of charter amendments, became vested with power to regulate street railway fares. (Stats. 1911, part II, page 2051, et seq.) If in the exercise of this power, the city of Los Angeles has enacted its own local regulations, those regulations have superseded the general laws, and any statute in force which otherwise would govern as to the public utility in question, is superseded in its operation and effect, so long as the city chooses to continue in the exercise of its paramount right of control. The complaint in the case at bar is silent upon the subject of action or nonaction by the city of Los Angeles in the exercise of the power so reserved; and perhaps we would be justified in assuming, against the plaintiff, that the supposed regulations have been made. But even if the city has remained inactive as to this matter, that does not aid the plaintiff's case. For in this event, the Public Utilities Act, rather than the preceding statutes, would apply, and a statutory penalty claimed under the act of 1878 could not be recovered. The Public Utilities Act is a general law, effective throughout the state, except only that its operation within a city having a charter like that of the city of Los Angeles is superseded whenever and so long as such city continues in the exercise of its powers of regulation of the public utility in question. But the provisions of section 82, above quoted, and the provisions of the constitution (art. XII, sec 23) go only to the extent of preventing any interference with the municipal right of control where such control exists and is exercised. Such legislation as that of the Public Utilities Act, when enacted, is complete as a law of the state; but it is provided that such law shall not have any such effect as will interfere with a city in the exercise of certain municipal powers which, under the constitution, are made superior to the general law. The provisions of the constitution, intended to preserve the self-governing powers of certain cities with re-

spect to these matters, were not intended to place any limitation upon the power of the state to substitute one general law for another.

The judgment is affirmed.

James, J., and Shaw, J., concurred.