[Civ. A. No. 3095.   Appellate Department, Superior Court, County of Los Angeles.—November 29, 1935.]

D. FENTON, Appellant, v. MARKWELL & CO., Respondent.

(2 Cal. Supp. 160.)

Sig E. Murphy, William H. Brawner and Harry K. Sargent for Appellant.

Vernon S. Gray for Respondent.

Mathes & Sheppard, Robert C. Ford, L. J. Styskal, O'Melveny, Tuller & Myers, Williamson, Ramsay & Hoge and Lloyd A. Free, as *Amici Curiae* on Behalf of Respondent.

SHAW, P. J.—By counts 1 and 3 of his complaint herein plaintiff seeks to recover, under the usury law, treble the sums paid by him for interest on certain loans alleged to have been usurious. Some of this interest was paid more than one year before the complaint was filed, and plaintiff has added to his complaint counts 2 and 4 for money had and received, by which he seeks to recover the sums paid for interest, not trebled. The loans were made and the interest thereon was paid prior to the general election of November 6, 1934, except that $49.50 of the interest was paid November 27, 1934. This action was commenced December 5, 1934. The trial court sustained a general and special demurrer to this complaint, and from the judgment entered on that ruling plaintiff appeals. ▇ By vote at the general election above mentioned, a new section numbered 22, was added to article XX of our state Constitution, relating to usury. This amendment, having been proposed by the legislature, took effect on the day of the election. (*Johnston* v. *Wolf*, 208 Cal. 286, 289 [280 Pac. 980].) This case therefore presents for decision the questions whether the constitutional amendment above mentioned operated to repeal the usury law, and if it did, whether such repeal abrogated and destroyed any or all of the causes of action asserted in the complaint.

The usury law was a statute adopted as an initiative measure by vote of the people in 1918. (Stats. 1919, p. lxxxvii; Deering's Gen. Laws, Act 3757.) Sections 1 and 2 and the first paragraph of section 3 of that statute read as follows:

"Section 1. The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or a shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing.

"Section 2. No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest, and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed.

"Section 3. Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or by his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery."

Section 3 contains further provisions declaring certain acts to be misdemeanors, all of which provisions have been held

unconstitutional and void (*In re Washer,* 200 Cal. 598 [254 Pac. 951] ; *Wallace* v. *Zinman,* 200 Cal. 585 [254 Pac. 946]), except a provision declaring it a misdemeanor to "violate the provisions of sections one and two of this act". (*People* v. *Campbell,* 110 Cal. App. (Supp.) 783 [291 Pac. 161].) Other parts of the act contain merely a repeal of certain conflicting laws, and a designation of the act as the "usury law".

Prior ·to the constitutional amendment above mentioned there was no provision in the Constitution regarding usury and the only provision in respect to interest was that of article IV, section 25, subdivision 23, prohibiting the passage by the legislature of local or special laws regulating the rate of interest on money.

The constitutional amendment reads as follows:

"Section 22. The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be seven per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding ten per cent per annum.

"No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than ten per cent per annum upon any loan or forbearance of any money, goods or things in action.

"However, none of the above restrictions shall apply to any building and loan association as defined in and which is operated under that certain act known as the 'Building and Loan Association Act', approved May 5, 1931, as amended, or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining industrial loan companies, providing for their incorporation, powers and supervision,' approved May 18, 1917, as amended, or any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining credit unions, providing for their incorporation, powers, management and supervision,' approved March 31, 1927, as amended or any duly licensed pawnbroker or personal property broker, or any bank as defined in and operating under that certain act known as the 'Bank Act', approved March 1, 1909, as amended, or any bank created and operating under

and pursuant to any laws of this State or of the United States of America or any nonprofit cooperative association organized under Chapter 4 of Division VI of the Agricultural Code in loaning or advancing money in connection with any activity mentioned in said title or any corporation, association, syndicate, joint stock company, or partnership engaged exclusively in the business of marketing agricultural, horticultural, viticultural, dairy, live stock, poultry and bee products on a cooperative nonprofit basis in loaning or advancing money to the members thereof or in connection with any such business or any corporation securing money or credit from any Federal intermediate credit bank, organized and existing pursuant to the provisions of an act of Congress entitled 'Agricultural Credits Act of ·1923', as amended in loaning or advancing credit so secured, nor shall any such charge of any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed. The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.

''The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith.''

▉ Two different rules regarding repeals must be considered here. Respondents invoke the rule declared in *Crooks* v. *People's Finance etc. Co.,* 111 Cal. App. (Supp.) 769 [292 Pac. 1065], and *Beneficial Loan Soc.* v. *Haight,* 215 Cal. 506 [11 Pac. (2d) 857], that where there is an irreconcilable repugnancy between two statutory provisions, the later statute repeals the earlier one. This rule applies also to the case where the later provision is constitutional and the earlier is statutory. (*McDonald* v. *Patterson,* 54 Cal. 245; *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 484 [11 Pac. 3]; *Martello* v. *Superior Court,* 202 Cal. 400, 405 [261 Pac. 476]; *Ransome-Crummey Co.* v. *Woodhams,* 29 Cal. App. 356, 358 [156 Pac. 62].) The basic difference between sections one and two of· the usury law and the first two paragraphs of section 22,

article XX, of the Constitution is that the former prohibit interest at a greater rate than twelve per cent per annum and the latter, while also prohibitory, fix the maximum rate at ten per cent. This difference alone does not create an irreconcilable repugnancy, and if the first two paragraphs of section 22, article XX, were all of the constitutional amendment, and the rule of construction above stated were the only one to be considered, we might well hold that the usury law remained in force after the constitutional amendment and could be applied to all those violations of the latter which it would reach.

But there are other parts of the constitutional amendment to be considered, and there is another rule regarding repeals which is stated in *Mack* v. *Jastro,* 126 Cal. 130, 132, 133 [58 Pac. 372], as follows: ''While it is true that repeals by implication are not favored, whenever it becomes apparent that a later statute is revisory of the entire matter of an earlier statute, and is designed as a substitute for it, the later statute will prevail, and the earlier statute will be held to have been superseded, even though there be found no inconsistencies or repugnancies between the two . . . It is not so much a repeal by implication as it is that, the legislature having made a new and complete expression of its will upon the subject, this last expression must prevail, and whatever is excluded therefrom must be ignored.'' To the same effect are *State* v. *Conkling,* 19 Cal. 501, 512; *Treadwell* v. *Board of Supervisors of Yolo County,* 62 Cal. 563, 564; *Dillon* v. *Bicknell,* 116 Cal. 111, 114 [47 Pac. 937] ; *Sponogle* v. *Curnow,* 136 Cal. 580, 584 [69 Pac. 255] ; *Harris* v. *Cooley,* 171 Cal. 144, 147 [152 Pac. 300] ; *Carter* v. *Stevens,* 208 Cal. 649, 651 [284 Pac. 217] ; *Suydam* v. *Los Angeles Ry. Co.,* 27 Cal. App. 157, 161 [149 Pac. 55] ; *In re Weymann,* 92 Cal. App. 646, 650 [268 Pac. 971] ; *Bank of Italy* v. *Symmes,* 118 Cal. App. 716, 721 [5 Pac. (2d) 956] ; *Wood* v. *Roach,* 125 Cal. App. 631, 638 [14 Pac. (2d) 170] ; *Jewett* v. *City Transfer etc. Co.,* 128 Cal. App. 556, 562 [18 Pac. (2d) 351] ; *People* v. *Carter,* 131 Cal. App. 177, 181 [21 Pac. (2d) 129]. In *Sponogle* v. *Curnow, supra,* the court said : ''Although an act or part of an act may not be repealed expressly or by necessary implication, still a revision of the whole subject matter covering said act would supersede all such portions as were omitted from the revisory act.'' We have no doubt that this rule, like that

first referred to, applies to a case where the later provision is found in the Constitution.

On a consideration of the constitutional provision as a whole, we are of the opinion that it was clearly intended to cover the whole subject-matter of usury, that the usury law is repugnant to it, and that such parts of the usury law as are not repeated in it are repealed by it. Following the first two paragraphs of the amendment, which, as above stated, might, if they stood alone, be consistent with the continued existence of the usury law, we find the provisions that "none of the above restrictions shall apply to" many different sorts of money lending institutions, and that "The legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or. limit the fees, bonus, commissions, discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action." The "exempted classes" here provided for, including, as they do, building and loan associations, banks, pawnbrokers, personal property brokers and various other money lenders, undoubtedly do a major part of the money lending business transacted in the state.

It is not at all likely that the legislature in framing and the people in adopting this constitutional amendment, intended to free all of these money lending institutions from the limitation of interest rates to ten per cent and at the same time subject them to all the pains and penalties of usury if they charged interest in excess of twelve per cent; but if there were any doubt on this point, it could not survive a consideration of the provision authorizing the legislature to regulate all of these institutions. That provision undoubtedly empowers the legislature to fix the rate of interest on loans made by the "exempted classes", and since it contains no limitation on such rate, that is left to the discretion of the legislature. Such a power in the legislature is inconsistent with the continued existence of the provisions of the usury law fixing a maximum rate of interest, because the usury law was adopted as an initiative measure and is therefore not subject to amendment or change by the legislature. (*Beneficial Loan Soc.* v. *Haight, supra,* at p. 509.) To make such legislative action possible those parts of the usury law just mentioned must

first be repealed, and this was done by the constitutional amendment in question. The other valid parts of the usury law directly refer to the provisions limiting the rate of interest and apply to them alone, and hence must follow those provisions into the limbo of repeal. To this statement the provision regarding compound interest may be an exception, but this case does not require us to decide that point. Of course, the Constitution might have directed that the usury law should remain in force until the legislature should enact other regulations, but it does not so provide; and, in view of the provisions already mentioned, and the further provision that "the provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith", it cannot be so construed.

■ A portion of the interest sued for was paid after this repeal, and plainly plaintiff can found no rights on that payment. But the larger part of the interest payments in question was made while the usury law was still in force. Counts 1 and 3 are based on the part of section 3 of that law above quoted which declares that the person who has paid usurious interest may recover from the recipient thereof "treble the amount of money so paid". The sum recoverable under this provision of the act is a penalty (*Haines* v. *Commercial Mtg. Co.*, 200 Cal. 609, 619 [254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725] ; *Esposti* v. *Rivers Brothers, Inc.*, 207 Cal. 570, 573 [279 Pac. 423] ; *Scott* v. *Hollingsworth*, 215 Cal. 314, 316 [9 Pac. (2d) 836, 82 A. L. R. 995] ; 66 Cor. Jur. 361), and so cannot be recovered after repeal of the statute providing for it. (*Spears* v. *County of Modoc*, 101 Cal. 303 [35 Pac. 869].) ■ Even should this recovery not be deemed a penalty, the right to it is one created by and dependent for its enforcement on the statute, and the rule in such a case is that the right falls and the statutory remedy ceases with the repeal of the statute, without a saving clause, unless that right has been carried into a final judgment. (*Napa State Hospital* v. *Flaherty*, 134 Cal. 315, 317 [66 Pac. 322] ; *People* v. *Bank of San Luis Obispo*, 159 Cal. 65, 67 [112 Pac. 866, Ann. Cas. 1912B, 1148, 37 L. R. A. (N. S.) 934] ; *Moss* v. *Smith*, 171 Cal. 777, 788 [155 Pac. 90] ; *Freeman* v. *Glenn County Tel. Co.*, 184 Cal. 508, 510 [194 Pac. 705] ; *Callet* v. *Alioto*, 210 Cal. 65, 67 [290 Pac. 438] ; *Krause* v. *Rarity*, 210 Cal. 644, 652 [293 Pac. 62, 77 A. L. R. 1327] ;

*Pacific Gas etc. Co.* v. *State of California,* 214 Cal. 369, 373 [6 Pac. (2d) 78] ; *Coombes* v. *Franklin,* 213 Cal. 164, 166 [1 Pac. (2d) 992, 4 Pac. (2d) 157] ; see, also, *Ewell* v. *Daggs,* 108 U. S. 143, 150 [2 Sup. Ct. 408, 27 L. Ed. 682] ; *Petterson* v. *Berry,* 125 Fed. 902.) Here there is no saving clause and the action was begun and judgment was entered after the repeal of the usury law. We find nothing to impair the rule just stated or defeat its application to the present case in *Coombes* v. *Getz,* 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866], on which plaintiff relies. It is true that case does reverse the decision of the California Supreme Court in *Coombes* v. *Franklin, supra,* but it does not question the rule stated by the California court; it merely holds that the cause of action there is contractual in nature and hence the rule is not applicable to it.

 ▮ Counts 2 and 4 are not founded on section 3 of the usury law. Indeed, a part of the interest paid by the plaintiff was paid more than one year before the action was brought, and hence could afford no basis for a recovery under section 3. These two counts are in the form of ordinary common counts for money had and received, and by them plaintiff seeks to recover merely the actual sums paid by him as usurious interest. This he could do, while the usury act was in force. (*Taylor* v. *Budd,* 217 Cal. 262, 266 [18 Pac. (2d) 333] ; *Babcock* v. *Olhasso,* 109 Cal. App. 534, 537 [293 Pac. 141].) But, although the remedy here sought is not statutory, the liability was created by the usury law, which made the receipt of usury unlawful. ▮ While the general rule is that if a contract is void by the law in force at the time it is made, the subsequent repeal of the law will not validate such contract, statutes changing the law relating to usury are an exception to this rule. (*Willcox* v. *Edwards,* 162 Cal. 455, 462, 463 [123 Pac. 276, Ann. Cas. 1913C, 1392] ; *Ewell* v. *Daggs,* 108 U. S. 143, 150 [2 Sup. Ct. 408, 27 L. Ed. 682] ; *Petterson* v. *Berry,* (C. C. A. 9th) 125 Fed. 902, 905 ; 66 Cor. Jur. 170 ; 27 R. C. L. 206 ; note in 87 A. L. R. 470, and cases there cited.) The defense of usury is in the nature of a statutory penalty upon the lender, and comes within the rule that repeal of a penal law releases the penalty imposed. (*Willcox* v. *Edwards, supra; Ewell* v. *Daggs, supra; Petterson* v. *Berry, supra; O. H. May Co.* v. *Anderson,* 156 Tenn. 216 [300 S. W. 12, 14].) The repeal so construed does not deprive

the borrower of a vested right, or impair the obligation of any contract. (*Ewell* v. *Daggs, supra.*) In the case just cited the court said "that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that, whatever the statute gives, under such circumstances, so long as it remains *in fieri*, and not realized, by having passed into a completed transaction, may by a subsequent statute be taken away". It is obvious that, in the face of the rule declared by the authorities above cited, plaintiff can maintain no common-law action to recover the usurious interest paid by him, after the repeal of the statute making it usurious and penalizing the lender by reason of the usury.

The judgment is affirmed, respondent to recover his costs of appeal. The appeal from the order sustaining demurrer is dismissed.

Fox, J., and Schauer, J., *pro tem.*, concurred.