GIMÉNEZ ET AL. v. BRENES.

## APPEAL from the District Court of Guayama.

No. 93.—Decided February 8, 1906.

ACITON—SPECIAL PROCEEDING.—The Code of Civil Procedure in force requires that for the prosecution of an action, there shall be a cause of action, parties plaintiff and defendant, a trial and a final judgment, and that a special proceeding of a civil nature is an action.

ID.—MORTGAGE—FORECLOSURE PROCEEDINGS.—The summary proceedings for the recovery of mortgage debts is the result of a contract between the parties, wherein the prestations have been agreed to, as also the manner of enforcing them in case of noncompliance, and if such contract is not contrary to public policy, it must be upheld, thus respecting the expressed will of the parties.

ID.—The summary proceedings established in the Mortgage Law and Regulations is not, by its nature and object, inconsistent with the ordinary proceeding of the Code of Civil Procedure, nor is there any conflict between the two.

ID.—CONSTITUTIONALITY OF THE SUMMARY MORTGAGE PROCEEDING—DUE PROCESS OF LAW.—The special or summary mortgage porceeding is constitutional and cannot be assailed on the ground of its not constituting due process of law, inasmuch as it does not leave unprotected the *bona fide* debtor who is heard, and afforded the means of righting the wrongs committed against him.

ID.—ORDINARY AND SPECIAL PROCEEDINGS.—Upon adopting the new Code of Civil Procedure, it was not the intention of the Legislature to establish a complete system of procedure, regulating not only ordinary but also special proceedings, wherefore the laws regulating such proceedings have remained in force and are consistent with the provisions of the aforesaid Code.

MORTGAGE LAW—REPEAL THEREOF.—None of the provisions of the Mortgage Law Law can be repealed by implication, but must be repealed by special law, according to the provisions of article 413 of said law, sanctioned by the Congress of the United States, which, under section 8 of the Organic Law, declared that the aforesaid law continued in force.

ACTION—COMPULSORY PROCEEDING.—The special proceeding for the recovery of debts continues in force as to the first part thereof, namely, up to and including the provisions in regard to the demand for the payment of the debt, but it has been repealed as to that portion which might be known as compulsory proceedings, that is, that portion having reference to the sale of the encumbered property, which must come entirely under the act of March 9, 1905, relating to judgments and the manner of satisfying them.

The facts are stated in the opinion.

*Mr. Díaz Navarro* for appellant.

MR. JUSTICE FIGUERAS delivered the following opinion of the court.

On August 15th of the year last past Doña Emilia Giménez and Doña Felicia García Brenes presented a petition to the Guayama court praying that, in accordance with article 170 of the Regulations for the execution of the Mortgage Law, an order be made directing the marshal to require the debtor, Julio Brenes y Aponte, who is in the civil possession of the properties mortgaged, to pay within 30 days the sum of $670 due them on a mortgage, together with the interest due on that sum at 6 per cent for the last two years, the part due on the present annual installment, and the costs incurred or which may be incurred; and that he. be admonished that the public sale of the properties encumbered will be proceeded to in case of failure to comply with the demand.

The Guayama court made the following order:

''This action was brought for the purpose of recovering a mortgage debt under the special proceedings provided for by articles 128 of the Mortgage Law and 169 of its Regulations, by virtue of the provisions of section 85 of the act relating to special proceedings, approved March 9, 1905.

''The plaintiff made an application before the judge of this court at chambers, requesting that an order be made directing the debtor to pay, and that he comply with the other requirements of said special proceeding.

''There can be no doubt whatever that the special proceeding provided for by the Mortgage Law was repealed by the Law of Civil Procedure, approved March 1, 1904, not only by the repealing clause of that law, but also by implication.

''The Law of Civil Procedure provides for the form and the rules of procedure for a civil action, and the doctrine is well settled that, 'in the absence of express words of repeal, a prior statute will be considered to have been modified by a subsequent law, if it was the intention of the latter to cover the point to which both refer and which prescribes the only rules governing that point.' (Sutherland on ''Statutory Construction.'')

''Section 85 of the act relating to special legal proceedings reads as follows:

'' 'This act shall take effect from and after its passage, and all previous laws in conflict herewith are hereby repealed; but the special proceedings established in the Civil Code in the Mortgage Law and

its Regulations, and in any other law, in so far as not provided for by this act, remain in force.'

"Has this section the effect of reviving the Mortgage Law procedure for the recovery of debts secured by mortgage? This court clearly thinks it has not. It is true that it provides that the special proceedings established by the Mortgage Law shall continue in force, but the only construction which can be placed on those words is that the special proceedings established by the Mortgage Law, in force at the date of the approval of the said law, shall continue in force. It cannot be maintained that the Legislature can revive a law which has been repealed, unless it does so in express terms.

"In this connection the case of *State* v. *Conkling*, 19 Cal., 501, may be cited. In that case an action was prosecuted to recover moneys alleged to be due to the State for the percentage on sales of personal property made under the Revenue Act of 1857. Sections 49 and 52 of this law imposed a tax in favor of the State of one-half of 1 per cent on all sales made at public auction within the State. These sections were repealed by the act of 1859, and by the Revenue Act of 1861 it was provided that this law would not repeal the sections of the act of 1857, to which reference has been made. The Supreme Court of California, in its decision in that case, says:

"'It is not necessary to consider the effect of the revenue acts of 1860 and 1861; for, if we are right in supposing the act of 1859 a repeal of or as superseding the quoted section of the act of 1857, it is very obvious that a mere legislative declaration that that act *shall not repeal* these sections, is not a law reviving them or enacting them, even if the Legislature could give such retrospective effect to their acts; but there can be no law without a legislative intent that it become such; and such intent must be manifested by language declaring the legislative will.'

"The petition of the plaintiff is therefore denied.—Guayama, August 24, 1905."

We know of no objection whatever to the contention that the summary proceedings established by the Mortgage Law and its Regulations for the recovery of money secured by mortgage was in force up to the time when the Code of Civil Procedure went into effect, or up to July 1, 1904. It was from this date that doubts arose, and from that moment some opinions to the contrary have been expressed until there

seems to be an equal division of opinion as to whether or not the provisions of that law are still in force.

The code of Civil Procedure above cited contains a repealing clause in its section 361, which reads as follows:

"All laws, royal decrees, orders, military orders, acts, or parts of acts, inconsistent or in conflict with this act, are hereby repealed."

It is maintained by some that the clause above quoted repealed the summary proceedings for the recovery of mortgage debts, but they must be sincere in their arguments, and above all must show, as maintained by their arguments, the incompatibility or conflict between the two Codes under consideration, and it is impossible to prove the incompatibility of or conflict between two Codes whose very nature is distinct, and each of which accomplishes its own purpose by a different method.

The Code of Civil Procedure in force governs, in ordinary civil actions, the proceedings or remedies pursued.

The summary procedure for the recovery of mortgage debts is the result of a contract between parties wherein they have agreed upon the prestations and have also stipulated the method of collecting the debt in case of noncompliance, that is to say, in case of failure of the debtor to pay.

The acknowledged origin of our Code of Civil Procedure is the California Code, which in its section 22 says:

"An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

So that the Code of Civil Procedure in force requires that for the prosecution of an action there shall be a cause of action, parties plaintiff and defendant, and a trial and final judgment putting an end to the litigation.

The summary proceeding for the recovery of mortgage debts does not require anything of the sort, because it is the

wish of the parties that it be so, inasmuch as they have agreed upon a special method of adjusting their differences, and their wish must be respected. Such a contract must be upheld because it is not contrary to public policy, as has been maintained and is maintained in the United States in regard to a contract known as a pledge wherein the remedies open to the creditor are provided for in case of noncompliance, and the pledgor may waive notice and authorize the pledge to sell at public or private sale without advertisement or notice, at his discretion, provided the sale is made in good faith. (Bouvier's Law Dictionary, vol. 2, p. 687.)

All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor, not exempt by law, and all property and right to property seized and held under attachment in the action are liable to execution * * * . Section 246 of the Code of Civil Procedure, which went into effect on July 1, 1904, and article 168 of the Regulations for the execution of the Mortgage Law in summary proceedings for the recovery of money secured by mortgage, limit execution and sale at public auction exclusively to the property encumbered thereby.

So that they are not incompatible either in respect to their nature or their purpose, nor is there any conflict between the two proceedings, and for that reason the latter has not repealed the former, established in the Mortgage Law and its Regulations.

And this same reasoning may be used as an answer to the argument usually advanced, that according to the new Code of Civil Procedure an appeal can not be authorized unless there is a judgment, and in order that a judgment may exist there must be a trial, and in order that a trial may be had there must be an action, and in order that an action may exist there must be a dispute in which all persons having adverse interests and rights may be parties and that they be permitted to allege and defend such rights and interests.

All this reasoning is acceptable. And why not, if it is the

spirit of the Code referred to which governs? But what we can not see is, that because nothing of the sort is found in the proceedings provided for in articles 127 to 133 of the Mortgage Law and 168 to 176 of its Regulations, all those proceedings should be considered to have been repealed, when we have already seen that such proceedings so regulated arise out of a contract of loan, like a mortgage, and has been agreed upon by the contracting parties.

Several decisions of the Supreme Court of California have been cited as well as the commentaries of authorities on the subject, but as all of them are similar we will cite the decision rendered in the case of *State* v. *Conkling*, 19 Cal., 501-513. There it was said:

"When the Legislature makes a revision of particular statutes, and frames a general statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored."

Of course we think that decision is good in an applicable case, but it is venturesome to suppose that the Legislature of Porto Rico, in debating upon and passing the Code of Civil Procedure intended to enact a general statute inclusive of the whole subject; and it is venturesome to affirm that it intended to provide a complete system embracing the whole scheme of procedure then in force in the Island; and we are so strongly convinced to the contrary that our contention is supported by the subsequent acts of that very same Legislative Assembly.

We have agreed to designate as a special proceeding the summary proceeding for the recovery of mortgage debts, and the most direct reference which we have found in the Code of Civil Procedure is in its section 75, which says: "Third. For the foreclosure of a mortgage on real property," and then continues speaking of the jurisdiction of the court when the

property is situated partly in one district and partly in another, but this is only a true copy of section 939 of the California Code and refers to the common procedure and not to the special proceedings provided for in Part II of said Code and contained in subsequent titles which are the following:

"Title I.—'Writs of Review, Mandate and Prohibition.'

"Title II.—Of 'Contesting Certain Elections.'

"Title III.—Of 'Summary Proceedings.'

"Title IV.—Of the 'Enforcement of Liens.'

"Title V.—Of 'Contempts.'

"Title VI.—Of the 'Voluntary Dissolution of Corporations.'

"Title VII.—Of 'Eminent Domain.'

"Title VIII.—Of 'Escheated Estates.'

"Title IX.—Of 'Change of Names.'

"Title X.—Of 'Arbitrations.'

"Title XI.—Of 'Proceedings in Probate Courts.' "

So it is seen that the California Code shows an intention on the part of the Legislature of the State to establish a complete system of ordinary procedure and special proceedings, and it is evident that if a particular statute upon either of the methods of procedure has been left out it must be understood to have been repealed, *ipso facto.*

But this is not the case with our Code of Civil Procedure, the intention of which was more limited, as is proved by the fact that Title IX, which treats of "Actions in Particular Cases," and the last title, which treats of "Summary Proceeding" and "Confession of Judgment Without Action," are not understood as special proceedings, and we see absolutely nothing referring to special proceedings; and therefore it can not be successfully maintained that it was the desire or intention of our Legislature to establish a complete system of procedure, so that the particular or special statute, providing for the recovery of mortgage credits, might be deemed to have been repealed.

On the contrary, we have said that our intention was the

more limited and we also said that the Legislature, by its subsequent acts, has shown that it was not its intention to legislate in regard to special proceedings. Later it realized that the Code of Civil Procedure was defective and attempted to remedy these defects by enacting special laws of procedure governing testamentary and intestate proceedings, the division and partition of an inheritance, the appointment of guardians, and appointment of counsel. It also enacted provisions in regard to adoption, authority over rights and property of minors, administration of property of absent persons, and temporary maintenance; and all this was contained in the Act approved March 9, 1905, much later than the Code of Civil procedure under consideration, which went into effect on July 1, 1904. Therefore it did not have the general intention supposed which would authorize us to assume that the particular statute to which we refer was repealed.

But was the special procedure for the recovery of mortgage debts repealed by implication?

We shall see. Section 50 of the Code of Civil Procedure says:

"The word 'action' as used in this title is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature."

Subdivision 1 of section 295 of the said Code says:

"That an appeal may be taken from a final judgment rendered in an action or special proceeding."

And under these premises it is inferred by some as a consequence that the proceeding provided for the recovery of mortgage debts being a special proceeding, the same was repealed by implication by the above enactment.

But the fact is that section 50 is a true copy of section 363 of the Code of Civil Procedure of California.

Section 295 is a true copy of section 939 of the said California Code.

In this Code special proceedings are perfectly regulated.

Our Code provides no regulations in regard to that class of proceeding, unless we repeat, those established by Title XI and the last title thereof be so regarded.

Therefore the expression ''special proceeding'' contained in sections 50 and 295, and possibly some other sections of our Code of Civil Procedure, are either references to the special proceedings under the California Code (and this is an absurdity), or they refer to proceedings established by the two titles above cited of our Code of Civil Procedure, or to writs of *mandamus*, or to prohibitory or inhibitory writs, if they also may be considered as special proceedings; but nothing is said therein or insinuated which can even remotely refer to the recovery of mortgage debts.

We speak of the Code of Civil Procedure as it was promulgated on July 1, 1904, because since then certain special legal proceedings have been established by legislative enactment, and those may be to-day included by sections 50 and 295 above cited in the reference to special proceedings.

It has also been affirmed that the summary proceedings for the recovery of mortgage debts is in opposition to the constitutional provision that no person shall be deprived of life, liberty or property without due process of law.

This argument is without strength and we think its supporters will be few.

That summary or special proceeding is nothing more nor less than the law administered in its regular course by the courts of justice, and we here reproduce the decision and opinion cited in appellant's brief to show the constitutionality of the special mortgage proceeding, the purpose of which was the development of the territorial credit without leaving a debtor in good faith unprotected, who is heard and given the means whereby to redress wrongs practised against him by an unscrupulous creditor.

We are not satisfied, therefore, with the reasons advanced by those who maintain that the summary proceeding for the

recovery of mortgage credits is not in force, but this does not mean that we have pronounced the *noli me tagere* upon the subject. We cannot deny the power which the Legislative Assembly has to repeal or modify any law whenever it may deem such action conducive to the public welfare; but in addition to the reasons stated, the fact that the Legislative Assembly was cognizant of the provisions of article 413 of the Mortgage Law has great weight with us. That article reads as follows:

"None of the articles composing this law can be repealed, except by virtue of another special law, and the appropriation law can never be considered a special law for this purpose."

The Mortgage Law and its Regulations were in force in their entirety on May 1, 1900, when the Organic Law, passed by the Congress of the United States on April 12 of the said year went in to effect.

Section 8 of the said Organic Law provided that the Mortgage Law and its Regulations should continue in force, and therefore by implication Congress acknowledged that none of its articles could be repealed except by a special law, as provided by article 413 above cited. So that the whole of the Mortgage Law, and with it the express form of repeal, has the indisputable sanction of our Constitution passed by the Congress of the United States.

Then we will once more acknowledge the power which the Legislative Assembly of Porto Rico had and still has to repeal the Mortgage Law; but not having done so by a special law, the arguments in support of the contention that it was repealed by implication, as we have already seen, are not logical and such a repeal by implication in any case would be in violation of the law providing that a repeal thereof must be by a special law, and that such a repeal by implication was not the intention of the Legislative Assembly is again revealed in a subsequent enactment, that is to say, the law

above cited, approved March 9, 1905, establishing certain legal proceedings, when it says in its section 85:

"\* \* \* but the special proceedings established in the Civil Code, in the Mortgage Law and its Regulations, and in any other law, in so far as not provided for by this act, remain in force."

It is maintained by some that this clause has no force whatever, because it is a provision as to how laws shall be construed, which is exclusively the province of the courts.

We, on the other hand, are of the opinion that it is a legislative provision which shows that at the time this law was passed it was still the intention of the Legislature to continue in force the summary proceedings for the recovery of mortgage debts, and for that reason it employs the verb *remain* which in this case signifies a continuation of the thing commenced, that is to say, that said procedure had not been interrupted, that it was still in force and, in short, that up to date there had not been a break in its continuity.

It is clear that those who think the summary procedure for the recovery of mortgage debts was repealed by the Code of Civil Procedure say that a thing whch has ceased to exist cannot be revivified; but we maintain that that procedure coexisted together with the Code of Civil Procedure and that the law approved March 9, 1905, again comes to our support.

But then another law was passed and approved March 9, 1905, which went into effect thirty days after its approval, which is entitled "An Act Relating to Judgments and the Manner of Satisfying Them," and that special law partly changes the proceedings for the recovery of mortgage debts.

The English version of that law, which governs because the Spanish version contains an error, says:

"Section 1. That decision and judgments rendered in all actions or special proceedings for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damage and costs with a foreclosure of his lien on the property subject thereto, and that an order of sale shall be issued to the marshal of any district

where such property may be, directing him to seize and sell the same in satisfaction of the judgment in the manner provided by law for the sale of property under execution; and if the property cannot be found, or if the proceeds of such sale be insufficient to satisfy the judgment, then to secure the money, or any balance thereof remaining unpaid, out of any other property of the defendant, as in the case of ordinary executions."

Here we have the Legislative Assembly legislating for the first time in a special and definite manner upon the mortgage procedure, and the provisions of this law duly define the state of the law upon this subject.

We have already held that the said procedure was not repealed by the Code of Civil Procedure, and we so decided on February 28, 1905, in the appeal of José Rosado Canas from a decision of the Registrar of Property of Caguas (8 P. R. Rep., p—), and we had found no reason to change our opinion in regard to the matter. And according to our way of thinking and in compliance with the act relating to judgments and the manner of satisfying them, approved March 9, 1905, to go into effect thirty days after its approval, we now come to the conclusion that the special procedure for the recovery of debts secured by mortgage is still in force, in so far as the first part of the same is concerned, and up to and including the provisions in regard to the demand upon the debtor for the payment of the debt and that it 'has been repealed in respect to that part which might be called "compulsory proceedings," that is to say, as to the sale of the property encumbered by the mortgage, which is governed in all respects by the Act approved March 9, 1905, above cited, relating to the manner of satisfying judgments.

This conclusion reached by the foregoing reasoning compels us to recommend the reversal of the judgment of August 24, 1905, rendered by the judge of the Guayama court, and consequently that a demand should be made upon the debtor for payment as prayed in the initial complaint, and that in

due time the provisions of the law relating to judgments and the manner of satisfying them be complied with.

*Reversed.*

Chief Justice Quiñones and Mr. Justice Hernández concurred.

Mr. Justice MacLeary dissented.

Mr. Justice Wolf did not sit at the hearing of this case.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

This is a summary proceeding instituted by Mrs. Emilia Giménez and Mrs. Felicia García y Brenes, against Julio Brenes y Aponte, in the District Court of Guayama, seeking to foreclose a mortgage under artricle 128 of the Mortgage Law, and sections 169 and 170 of the Regulations attached to the said statute providing for its enforcement. They requested the court to issue an order to the marshal, commanding him to require the said Brenes Aponte, who was in possession of the lands mortgaged, to make payment to the applicants within thirty days of $660 alleged to be due them on the mortgage debt, together with interests and costs, and in case payment was refused, that the mortgaged property should be sold by the marshal to satisfy the debt. This is the usual summary proceeding for the collection of mortgage debts which is provided by the Spanish Code, known as the Mortgage Law. Hon. Chas E. Foote, judge of the District Court of Guayama, ruled that this method of foreclosing a mortgage could not be followed since the adoption of the Code of Civil Procedure, which went into effect on the 1st of July, 1904; and in refusing the application gave the following reasons, to wit:

"This is an action for the recovery of a mortgage debt presented in accordance with the special procedure provided for in the Mortgage Law of 1883, and founded upon article 128 of said law, article 169 of the Regulations, and article 85 of the Law of Special Proceedings, approved March 9, 1905. The plaintiff made a motion August

22, 1905, before the judge of this court, at chambers, asking that an order be granted directing that payment be demanded of the debtor, and that other requirements of this special procedure be complied with.

"That the special proceeding embodied in the Mortgage Law was repealed by the Law of Civil Procedure approved March 1, 1904, there can be no doubt. It was repealed not only by force of the repealing clause of said law, but also by implication. The Law of Civil Procedure prescribes the manner of and rules for the prosecution of a civil action, and the doctrine is well settled that.:

" 'Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the subject embraced by both and to prescribe the only rules in respect to that subject that are to govern.' (Sutherland on 'Statutory Construction,' sec. 154.)

"Article 85 of the Law of Special Proceedings is as follows:

" 'This act shall take effect from and after its passage and all previous laws in conflict herewith are hereby repealed; but the special proceedings established in the Civil Code, in the Mortgage Law and its Regulations, and in any other law, in so far as not provided for by this act, remain in force.'

"Has this provision the effect of reviving the procedure of the Mortgage Law for the recovery of debts secured by mortgage? The court thinks clearly it has not. True it is provided that the special proceedings of the Mortgage Law remain in force, but the only construction that can be placed upon these words is that the special proceedings of the mortgage law *in force at the time of the approbation of this law continue in force.* It cannot be pretended that the Legislature can, except by express terms, revive a repealed law. The case of *State* v. *Conkling,* 19 Cal., 501, may be cited in this connection. This was a suit to recover moneys alleged to be due the State for percentage on sales of personal properties by auctioneers under the Revenue Act of 1857. Sections 49 to 52 of this act allowed a tax in favor of the State of one-half of 1 per cent on all personal property sold at auction within the State. These sections were repealed by an act of 1859, and in the Revenue Act of 1861 it was declared that this act (1861) shall not repeal the sections of the act of 1857 referred to. The Supreme Court of California in its decision uses the following language:

" 'It is not necessary to consider the effect of the Revenue acts of 1860 and 1861; for, if we are right in supposing the act of 1859 a repeal of or as superseding the quoted section of the act of 1857, it

is very obvious that a mere legislative declaration that that act *shall not repeal* these sections, is not a law reviving them or enacting them, even if the Legislature could give such retrospective effect to their acts; but there can be no law without a legislative intent that it become such; and such intent must be manifested by language declaring the legislative will.' ''

The only question arising on this appeal is whether or not the Mortgage Law of Porto Rico, with the Regulations accompanying it for its enforcement, or any of the sections thereof have been modified, amended or repealed by any subsequent law, and if so, to what extent.

The preliminary question of whether or not the Mortgage Law was annulled by the Constitution of the United States immediately on the change of sovereignty from the Spanish to the American Government, although not directly presented in the case at bar, cannot be passed over without at least a brief notice. It is contended by opponents of the summary remedies provided in the Mortgage Law that the Spanish method of procedure for the foreclosure of mortgage liens and the collection of debts thereby secured, is incompatible with our system of government, and in contravention of the National Constitution. They maintain that such procedure does not give the defendant his day in court, and that therefore its enforcement is not ''due process of law,'' under our constitutional guarantee. The definition of ''due process of law,'' given by Daniel Webster in the *Dartmouth College case,* is resorted to in order to sustain this view. This term is considered as equivalent to the phrase ''the law of the land.'' (1st Bouvier Law Dictionary, 621.) Mr. Webster defines ''due process of law'' and ''the law of the land'' in the famous *Dartmouth College case,* as follows:

''By the law of the land it is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold life, liberty, property and immunities under the protection of the general laws which govern society. Everything

which may pass under the form of enactment is not therefore to be considered the law of the land.'' (*Trustees of Dartmouth College* v. *Woodward*, 17 U. S., 581.)

This definition given by Daniel Webster was approved by the Supreme Court of the United States, not only by the decision in that case, but sixty-four years afterwards, in the case of *Hurtado* v. *California*, 110 U. S., 535, 536. The Supreme Court of the United States, in the latter case, speaking through Mr. Justice Matthews, uses these remarkable words:

''Arbitrary power, enforcing its edicts to the injury of the persons and property of its subjects, is not law, whether manifested as the decree of a personal monarch or of an impersonal multitude. And the limitations imposed by our constitutional law upon the actions of the Government, both state and national, are essential to the preservation of public and private rights, notwithstanding the representative character of our political institutions. The enforcement of these limitations by judicial process is the device of self-governing communities to protect the rights of individuals and minorities, as well against the power of numbers, as against the violence of public agents transcending the limits of lawful authority, even when acting in the name and wielding the force of the Government.'' (*Hurtado* v. *California*, 110 U. S., 536.)

Those maintaining the position that the Spanish Mortgage Law is unconstitutional contend that due process of law, within the meaning of the foregoing definition of the great expounder of the Constitution and of the Supreme Court approving the same, renders it necessary that the inquiry set on foot in the foreclosure of a mortgage must extend to all other questions between the parties affecting their rights; that if the defendant is limited too narrowly by the court in the legal defenses that he may set up in the proceeding, and he is compelled to resort to another proceeding which does not afford him his proper remedy, it cannot be said that he has had an opportunity to be heard, nor had his day in court, and violence would be done to Mr. Webster's definition. The advocates of this view refer to the fact that in the course of

an elaborate discussion on the signification of the term ''due process of law'' Bouvier, or the editor Rawle, makes the following apt quotations from judicial opinions, to wit:

'' 'Due process of law undoubtedly means, in due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights' (12 N. Y., 209). Law in its regular course of administration through courts of justice is due process; and when secured by the law of the State, the constitutional requirement is satisfied (139 U. S., 462.) The phrase as used in the Constitution does not mean 'a statute passed for the purpose of working the wrong.' That construction would render the restriction absolutely nugatory, and turn this part of the Constitution into mere nonsense. The people would be made to say to the two houses: 'You shall be vested with the legislative power of the State, but no one shall be disfranchised or deprived of any of the rights or privileges of a citizen, unless you pass a statute for that purpose. In other words, you shall not do the wrong unless you choose to do it' (per Bronson, J., in 4 Hill N. Y., 140). 'The meaning of these words is that no man shall be deprived of his property without being heard in his own defense.'' (Tucker, J., in 1 Hen. & M., 531; see, also, 6 W. & S., 171). (1 Bouvier's Law Dict., 622.)

Contending for a more liberal system of procedure, they say that the evident purpose of the mortgage law was to bind the debtor hand and foot and deliver him over to the tender mercies of the creditor, who, like Shylock, stands demanding the pound of flesh nominated in the bond. That the statute, having been passed for the purpose of working a wrong, falls within the denunciation of the Constitution and is therefore void.

It is true as contended that the only plea in bar permitted by the procedure established by the Spanish law for the execution or the foreclosure of a mortgage was that of payment. If the instrument was a forgery the defendant had to file a criminal action against the plaintiff, or the person accused of the forgery, and on presentation of a certificate to the court wherein the mortgage proceedings were pending, he could

obtain a suspension of them to abide the result of the criminal case. While a third party could intervene and set up a claim to the property in controversy, the defendant was not permitted to do so; nor could he allege fraud, duress, undue influence or any other ground which in justice and equity would entitle him to a judgment or decree setting aside the mortgage. He was limited in his defense to his plea of payment, and to his right to obtain a suspension of proceedings by instituting a criminal action charging forgery in the signing of the mortgage deed. It is true that he was under this system permitted to bring a declarative suit, independent of the mortgage proceeding, but his only right in the declarative suit, should he be able to prevail over the mortgage creditor, was to obtain a judgment awarding him the proceeds of the sale of the property under the mortgage proceedings; and to that end the court, in which the declarative suit was pending, could, on application of the plaintiff, issue an interdict or restraining order prohibiting the mortgage creditor from receiving the proceeds of the sale until the declarative suit might be determined. Moreover when the title had once passed to the purchaser at the sale no other remedy was left to the defendant except to receive the proceeds, arising from the secrifice of his property, less the expense of making the sale. His land was forever lost. The right to obtain the proceeds seems to us to be a poor relief indeed to the owner of lands who might be made a defendant in mortgage proceedings in a case in which the property might be sold for less than half its full value.

By the passage of the Organic Law of Porto Rico, which in my opinion did away with private prosecutions in this Island, the defendant in the mortgage proceeding has lost his right to institute the criminal complaint as private prosecutor upon which to base a suspension of the foreclosure of the mortgage by a sale of the lands. A criminal prosecution can now be instituted only by the Attorney-General and other officers of the government, and it is subject entirely to their

control. Private prosecutions no longer obtain in the administration of the criminal law in Porto Rico. Hence the defendant, after the Organic Act took effect, was practically limited, as to his defenses in the mortgage procedure, to the solitary plea of payment.

However, this court has not heretofore had its attention directly called to this discrepancy between the Constitution of the United States, or the American system of government, and the proceedings established by the Mortgage Law, and it is not necessary, in my opinion, for the decision of this present case, that the question should be now definitely decided.

Even granting, for the purpose of this discussion, that the Mortgage Law with its Regulations were in full force and effect up to the first of July, 1904, the correctness of the judgment of the District Court of Guayama, as presented to us, may be rested, as it his been, solely upon the force and effect of the Code of Civil Procedure, and the subsequent acts of the Legislature. The court below based the decision there made upon the plain proposition, that the special proceedings for execution or foreclosure of a mortgage, embodied in the Mortgage Law and the Regulations existing for its enforcement, were repealed by the Code of Civil Procedure, approved on the 10th of March, 1904, and taking effect nearly four months thereafter, that is to say on the 1st of the following July. In support of this proposition is cited Sutherland on "Statutory Construction," section 154, and the case of *The State* v. *Conkling,* 19 Cal., 501. Reference is also made to section 85 of the Law of Special Proceedings, Laws of 1905, page 156. The discussion of the district judge is very brief on this matter, but he touches the salient points, and decides the question submitted to him in plain and unequivocal terms.

It is contended by some devotees of the Mortgage Law that section 85 of the "Act Relating to Special Legal Proceedings," above cited, revives, or at least continues in force, the Mortgage Law and its Regulations. Let us first examine

this argument and see if it is well founded. The said section 85 reads as follows:

"This act shall take effect from and after its passage, and all previous laws in conflict herewith are hereby repealed; but the special proceedings established in the Civil Code, in the Mortgage Law and its Regulations, and in any other law, in so far as not provided for by this act, remain in force."

Certainly the language of this section is a little peculiar. Legislatures are generally content to designate in such clauses what acts or parts of acts are intended to be repealed, without declaring what should remain in force; leaving of course, all those in force which are not repealed. And in reality, in so far as the latter clause of this section is concerned, it has no effect whatever, because the laws which were in force and not repealed by the act, did, of course, remain in force, whether the Legislature so declared or no. However, this section does not purport to be a reenactment of any law which had been repealed, either expressly or by implication, prior to the passage of the "Act Relating to Special Legal Proceedings." It is simply a declaration by the Legislature of that which is obviously true, without such declaration, namely, that any law in force at the time of the passage of the act, and which is not in conflict with it, and which is not covered or provided for by the terms of the law of which the section forms a part, shall remain in force. Of course, any reasonable person would say at a glance that in order for a law to remain in force, with or without a declaration to that effect, it is absolutely necessary that it should be in force at the time such declaration shall be made, and if the law is in force, by every rule of construction, or every principle of legislation, it will remain in force, unless repealed, either expressly or by implication, or unless it shall expire by virtue of the terms of its own provisions. But it has never been disputed that a very large portion of the Mortgage Law and its Regulations, not being inconsistent or in conflict therewith,

continued in force, even after the passage of the Code of Civil Procedure, and, not being affected or covered by the terms of the said Code, such parts of the Mortgage Law and its Regulations still remain in full force and effect, by virtue of the provisions of the Organic Act. For instance, that portion of the Mortgage Law which refers to the nature and the preparation of mortgages, their registration, and the rights, obligations and liabilities of the several parties to mortgages, independent of the method of procedure for their enforcement, have no relation whatever to the subject covered by the Code of Civil Procedure, and consequently, not being inconsistent with or in conflict with the Code of Civil Procedure, or any subsequent law, they would not be affected thereby. Such being the case at the time the Legislature made the declaration now under discussion, in section 85 of the "Law Relating to Special Legal Proceedings," there were in force many sections and portions of the Mortgage Law and its Regulations; and the language of section 85 above quoted is simply a recognition by the Legislature that those portions of the Mortgage Law and its Regulations, which were at that time in force, and which were not provided for or in conflict with the provisions of the act cited, should remain in force after the passage of the said act. We cannot presume that the Legislature intended, in this irregular and unusual manner, to reestablish or reenact a law which had been repealed, either expressly or by implication; and the very language used by the Legislature shows that its intention was that this section should apply only to existing laws which were then in force.

Should it be maintained that this section of the "Act Relating to Special Proceedings" constitutes a contemporaneous construction of the Mortgage Law, and the Code of Civil Procedure, and as such merits our recognition, we must remember that the doctrine of contemporaneous construction is to be invoked only where the language of the statute is of doubtful import, and cannot be made plain by the help of any

other part of the same statute, nor by the assistance of any act *ini pari materia,* which may be read with it, and that such construction must continue for a long lapse of time without any change, either by legislation or judicial decision.　The term "long usage" has been interpreted to mean a continuous current running from forty to five hundred years in England, and for a much shorter time in America.　In some cases this period has been reduced to ten or fifteen years.　Certainly a single instance of legislative construction within twelve months or two years after the enactment of a statute cannot be considered as a contemporaneous construction to be followed by the courts.　But these principles are governed by the controlling rule that "legislative construction of old laws had no judicial force, whether right or wrong; the court must determine the proper interpretation from the statutes themselves."　(Sutherland on "Statutory Construction," secs. 307, 311, 312; *Stuart* v. *Laird,* 5 U. S., 308; *In re Warfield,* 22 Cal., 71; *Panaud* v. *Jones,* 1 Cal., 500; *Rogers* v. *Goodwin,* 2 Mass., 447; *Drain* v. *Baxter,* 57 Mich., 127; *State* v. *Severance,* 49 Mo., 401; *People* v. *Lowenthal,* 93 Ill., 191; *Brown* v. *State,* 5 Colo., 496; *Nelson* v. *Allen,* 1 Yerg., 360.)

It has been nevertheless urgently insisted that this section 85 of the law above quoted may be taken as a legislative construction of the Mortgage Law, and of the Code of Civil Procedure which had been previously enacted.　It is a matter of judicial knowledge, being current public history, that the Legislature which met in 1905 was not in its personnel the same Legislature which passed the Code of Civil Procedure, but it was composed of men of entirely different political complexion, and who had entirely opposite views concerning the important public questions which at that time agitated the people in Porto Rico.　Besides it is beyond the province of a legislative body to thus put a construction, which will be binding on the courts, on the laws enacted by its predecessors; it is the duty of the legislatures to make laws and of courts to construe them.　The Legislature is incapable of performing

judicial functions and cannot confer any other than judicial powers on the courts; so distinct are the respective spheres of action. (*Burgoyne* v. *Supervisors*, 5 Cal., 9; *Dickey* v. *Hurlburt*, 5 Cal., 343; *United States* v. *Ferreira*, 54 U. S., 39.)

And moreover, there is nothing in the language of this repealing clause which can in any sense apply to or have any relation whatever to the parts of the Mortgage Law and its Regulations which had been repealed by the enactment of the Code of Civil Procedurre, or other laws passed subsequent thereto.

I am at a loss to see how the act relating to judgments and the manner of satisfying them passed on the 9th of March, 1905, and taking effect thirty days thereafter, can have anything to do with interpreting or construing the Code of Civil Procedure, which had been passed long before, and was already in effect at the time this law received the sanction of the Legislature. The later statute dues not attempt to repeal the former, and if it is intended to enlarge or amplify in any way the remedies therein provided or to establish new remedies unknown to the said Code, that can be done without having any effect whatever upon those parts of the former law which are in no way inconsistent or incompatible therewith. It may be that certain sections of the Mortgage Law and the Regulations appertaining thereto have been altered or repealed by the law relating to judgments; if so, that fact does not militate against nor refute the proposition announced by the trial judge in making the order from which this appeal was taken, and consequently the matter does not need discussion at this time and in this court. It is a mistake to say that the Legislature, by this law relating to judgments, legislates for the first time as to mortgage proceedings. The citations herein made show that in the Code of Civil Procedure mortgage proceedings were intended to be included and special proceedings, including "actions in particular cases," were provided for to such an extent as the Legislature deemed at that time necessary, wise and prudent, and that no attempt

was made to hamper future legislatures, in any additional legislation that they might see fit from time to time to enact. We certainly cannot infer what was the intention of the second Legislature, which enacted laws in 1904, from acts passed by the third Legislature, whose legislation began in 1905. The latter legislature had the power to repeal, alter or modify the acts of the former Legislature, but, as has been shown herein, a construction to be put upon the terms of the former acts, and an explanation of the intention of their predecessors, were not within the province of the latter body. (See rule heretofore quoted from Sutherland on "Statutory Construction" and the cases cited in support thereof.)

Another very singular argument, advanced by those who maintain the continued effect of the proceedings under the Mortgage Law, is, that they are in the nature of what is termed in the United States, a pledge, and that the pledgor waives notice and authorizes the pledgee to sell at public or private sale, without advertisement or notice at his discretion, provided the sale is made in good faith. Reference is made in support of this proposition by those announcing it to Bouvier's Law Dictionary. Turning to that work, in volume 2, page 683, we find the word "pledge" which is there defined to be "a bailment of personal property as security for some debt or engagement." It is seen by this definition that a pledge has reference entirely to personal property, which is called movable in the civil law, and not to land or real estate, which by the same law is classed as immovable. Bouvier, on the same page, says further that "a pledge is distinguished from a mortgage because the essential feature of the pledge is transfer of possession, while the essential feature of the mortgage is transfer of title." Referring to *Casey* v. *Cavavoe*, 96 U. S., 467. And the same distinction exists in the civil law between a *pignus* and a mortgage or a *hypotheca*. Further distinctions are drawn by Bouvier between pledges and mortgages which show that this argument cannot afford any

rational basis to support the assumed existing validity of the proceedings for the execution of the Mortgage Law.

It is also said that because the summary proceeding established for the foreclosure of mortgages, can be taken as the result of a contract between the parties in which loans have been agreed upon, as well as the means of collecting the debt in case the conditions of the loan should not be complied with, or in case of failure of payment on the part of the debtor, as is claimed, this consent of the contracting parties renders valid the proceedings prescribed by the Mortgage Law and the Regulations for the execution or foreclosure of a mortgage. This contention is in direct opposition to the well-established principle of jurisprudence that parties can not by agreement set aside, nullify or abrogate the laws of their country, but that laws are made by the legislative authority for the government of the great body of the people and of all parties, and that all contracts must be made in compliance therewith. And it is further established by the entire current of judicial decisions that laws, which have to do only with the remedy for the enforcement of contracts, can be repealed at any time by laws passed after the making of the contract, without any violation of the constitutional provision forbidding the passage of laws impairing the obligations of contracts. Laws relating to the civil procedure and to the actions which shall be brought in court for the collection of debts, foreclosure of mortgages, and the like, are laws which treat of and regulate these remedies and do not interfere with the obligation of the contract; and parties making contracts cannot interfere with the law provided for their enforcement. In order for the consent of parties to have any effect in preserving the life of these moribund sections of the Mortgage Law it is necessary for such consent to confer jurisdiction on the district courts to make the necessary orders to expose the mortgage lands for sale. Without such jurisdiction the proceedings would be a dead letter. But consent of

parties can never confer jurisdiction on courts over the subject matter of any controversy. This is a principle too well established to require a citation of authorities, but a few will be mentioned. Among others the following decisions may be consulted in support of this proposition: *Minnesota* v. *Hitchcock,* 185 U. S., 382; *Byers* v. *McAuley,* 149 U. S., 618; *Elgin* v. *Marshall,* 106 U. S., 580; *Peoples Bank* v. *Calhoun,* 102 U. S., 260; *The Confiscation cases,* 87 U. S., 108; *The Lucy,* 75 U. S., 309; *Ballance* v. *Forsyth,* 62 U. S., 389; *Cutler* v. *Rae,* 48 U. S., 730.

Another barricade against possible repeal is sought to be erected by the defenders of the Mortgage Law in the proposition that, it being a special law, it is provided in section 413 of the law itself that none of its articles can be repealed except by virtue of another special law, and that the Code of Civil Procedure is not the kind of law necessary to effect such a repeal. Truly there must be a divinity that doth hedge a king, since royal edicts are sought as an authority to hamper the action of a free legislature, representing the sovereign people, in their rights to legislate for a territory over which that king no longer rules. In the interpretation of the meaning and effect of our insular statutes in regard to repeals, as well as in regard to everything else, reference must be made to American jurisprudence and not to the Spanish. This Island is American territory, and will always remain so; its government is American, and all its institutions are American, including its courts of justice. An American statute passed by the Insular Legislature and approved by our Governor, can repeal even a Spanish statute passed by the *peninsular cortes* and approved by the Spanish king. The Mortgage Law is no more irreparable or unchangeable than if it had been passed by the first Legislative Assembly sitting in Porto Rico in January, 1901. Then let us see what is the accepted canon of construction in regard to one legislature having power to bind succeeding legislatures as to the methods by which a law shall be repealed.

In most of the States there are some fundamental principles, in regard to the repeal or modification of previous laws laid down in their constitution, which, of course, must be followed by the legislatures of those States, or such repealing laws will be held to be unconstitutional. Our constitution, the Organic Act, is silent on this subject. It is true, as claimed by those holding to the continuing force of the entire Mortgage Law, that Congress, by section 8 of the said Organic Act, declared that the laws and ordinances then in force, perhaps including the Mortgage Law, should continue in full force and effect, in so far as the same were not in conflict with such of the laws of the United States as were locally applicable. It is expressly enacted in the same section that such laws are continued in force "until altered, amended or repealed by the legislative authority therein provided for;" that is to say such Insular Legislature. By section 15 of the Organic Act the Insular Legislature is fully empowered to amend, alter, modify or repeal any law or ordinance, civil or criminal, continued in force by this act, as it may from time to time see fit, without making any exception or prescribing any particular form for such legislation. This court has repeatedly held that the Legislature had these powers, and lately in the *habeas corpus* cases of Dones and Rivera, it reaffirmed its previous decisions on this subject. Is it possible that the American Congress, when it granted these powers to the Porto Rico Legislature meant that they should be exercised in accordance with the edicts of the Spanish monarch? That would be strange indeed! Spanish rules for the government of legislative action have no place in an American Legislature. Laws relating to the procedure to be followed in legislative bodies are in their nature political and are necessarily changed with a change of sovereignty to conform to those of the new nationality. (Sutherland on Stat. Cons., sec. 19; *Chicago R. R. Co.* v. *McGlinn,* 114 U. S., 546; *De Lima* v. *Bidwell,* 182 U. S., 1; *American Ins. Co.,* v. *Canter,* 26 U. S. 543; *Leitensdorfer* v. *Webb,* 61 U. S., 176.)

It is well established in American jurisprudence, by the decisions of American courts, as well as by the principles announced by the textwriters of known ability and authority, that no legislative body can bind itself or its successors by enacting irrepealable laws, unless such authority expressly granted by the Constitution, and every legislative body has the right to modify or abolish any or all acts passed by itself or its predecessors. Nor can any legislature bind a future legislature to any particular mode of repeal. If the American legislature has not this power, certainly the Spanish *Cortes,* if it ever had such power, was shorn of that prerogative in this Island by the change of sovereignty. To sustain these views reference may be made to the following authorities: *DeGroot* v. *United States,* 72 U. S., 432; *Chambers* v. *The State,* 25 Tx. 311; *Kellogg* v. *Pshkosh,* 14 Wis., 623; *Mongeon* v. *People,* 55 N. Y., 613; *Ely* v. *Thompson,* 3 A. K. Marsh, 70; *Bloomer* v. *Stolley;* 6 Mc Lean, 158; *Swift* v. *Newport,* 7 Bush, 37; *McNeill* v. *Commonwealth,* 12 Bush, 727; *Moore* y. *New Orleans,* 32 La. Ann., 726; *Commercial Bank* v. *Natchez,* 3 La. Ann., 698; *City Council* v. *Baptist Church,* 4 Strob., 306; *Files, Auditor* v. *Fuller,* 44 Ark., 273; *Wall* v. *State,* 23 Ind., 153; *Monet* v. *Jones,* 10 Sm. & Mar., 237; *Gilleland* v. *Shuyler,* 9 Kan., 569; *Oleson* v. *R. R. Co.,* 36 Wis., 383.

This brings us to the main question at issue on this appeal. To what extent, if at all, is the Mortgage Law with its Regulations modified by the Code of Civil Procedure? When the new law of Civil Procedure was enacted it is generally conceded that the former law authorizing declarative suits was repealed; and it is further claimed by many persons learned in the law, that certain sections of the Mortgage Law were also repealed by the same act. The repeal of those portions of the Mortgage Law is insisted on by persons holding these views, because the law of Civil Procedure applies to all claims of a civil nature that one citizen may have against

another, and affords him all the remedies which are necessary to enforce his rights or to protect his interests.

The question may be limited in this discussion to whether or not the enactment of the Code of Civil Procedure of Porto Rico constituted a repeal of the provisions of the Mortgage Law and its Regulations, so far as the procedure of foreclosure or execution of mortgages is concerned. Passing over the constitutional question raised and briefly reviewed in the former part of this opinion, it may be conceded, for the purpose of this discussion, that by the terms and provisions of the Organic Act the Mortgage Law and the Regulations connected therewith were continued in force in Porto Rico, until altered, amended or repealed by the Legislative Assembly of Porto Rico, in accordance with the provisions of sections 8 and 15 of the said act of Congress. The question then is, whether or not the enactment of the Code of Civil Procedure by the Legislative Assembly of Porto Rico constituted a repeal, either express or implied, of the existing law relating to the foreclosure or execution of mortgages. The repealing clause of the said Code of Procedure, section 361, thereof, is very broad, and reads as follows:

"All laws, royal decrees, military orders, acts, or parts of acts, inconsistent or in conflict with this act, are hereby repealed."

The question to be determined therefore is whether or not the Spanish law for the execution or foreclosure of mortgages and the regulations connected therewith are either inconsistent or in conflict with the terms and provisions of this later Code Let us glance at the conflict and inconsistencies which exist between these statutes. The title of the later act is as follows: "An Act to Establish a Code of Civil Procedure for Porto Rico." This is certainly a very comprehensible title, and shows the wide range of the law as contemplated by the Legislature. Section 3 of the act provides that certain courts of justice shall be established in the Island and the

general provisions immediately following this show conclusively that all civil proceedings, for the enforcement of rights or obligations by means of civil procedure, are controlled by the provisions of the act, and administered by the courts as provided for in that act, and that every matter of procedure relating to civil proceedings, is clearly and specificaly mentioned by the succeeding sections of the act. The powers of the judges in open court are specifically set forth in these sections; and section 22 of the act expressly provides what shall be the powers of judges in chambers. A direct reference to the matter of foreclosure of mortgages is contained in section 75 of the Code of Civil Procedure, which provides for the place of trial of civil actions. An action has been defined to be ''any judicial proceeding which if conducted to a termination will result in a judgment or decree.'' (*People* v. *County Judge,* 13 How. Pr., 1898; *Rowe* v. *Blake,* 99 Cal., 170, and 37 Am. St. Rep., 45.) And the Code of Civil Procedure itself, in section 75 clearly indicates that the foreclosure of a mortgage on real property is a civil action. The title including this section (75) limits its purpose and its contents to civil actions, and paragraph 3 of said section reads as follows:

''For the foreclosure of a mortgage on real property where the real property is situated partly in one district and partly in another, the plaintiff may select either district, and the district selected is the proper district for the trial of such action.''

The language could scarcely be plainer if it had been couched in the form of the definition of an action hereinbefore given. These are a few of the conflicts and inconsistencies between the enforcement of executory proceedings prescribed in the Mortgage Law and those established by the Code of Civil Procedure. They stand out in bold relief, like the figures on the Shield of Achilles, and cannot be brushed away.

It is said nevertheless that the Mortgage Law and the Code of Civil Procedure are different in their nature, and by

different means tend to fulfill their respective ends; and hence cannot be held to be inconsistent or in conflict with each other. To show that they are not in conflict an appeal is made to section 22 of the Code of Civil Procedure of California, defining an action as an *ordinary* proceeding, and contending that the same definition should prevail in our Code; that the Mortgage Law is a *summary* proceeding and not an *ordinary* proceeding, and consequently has no place in our Code of Civil Procedure. Whatever may have been the view taken by the Legislature of California of the difference between ordinary and summary proceedings, it cannot be reasonably contended that this distinction is drawn in our Code.

There is nothing in the Porto Rican Code corresponding to section 22 of the Code of Civil Procedure of California. The same omission is apparent in the Montana and the Idaho codes. It is a well known fact, of which judicial notice can be taken, that the Code of Civil Procedure of Porto Rico, was copied *verbatim,* where it was copied at all, from the Code of Civil Procedure of Idaho; and for example section 50 of the Porto Rican Code corresponds with section 3154 of the Idaho Code, and with section 559 of the Montana Code. There is no corresponding section in the California Code. It is true that the codes of Civil Procedure of Idaho and Montana were both taken, with various modifications, from the Code of Civil Procedure of California; but sections of the latter Code cannot be quoted to govern the codes of those States as well as the Code of Porto Rico, in the case to which they are sought to be applied, when these sections quoted are omitted entirely from those codes as well as from the Code of this Island.

But following out the argument advanced and taking the Code of Civil Procedure of California, to which reference has been made, that is to say, sections 20 ,21, 22 and 23 of said Code, to show the distinction between *actions* and *special proceedings,* we see that section 20 defines judicial remedies, to be such as are administered by the courts of justice, or by

judicial officers empowered for that purpose by the constitution and statutes of that state; and section 21 divides judicial remedies into two classes—first, *actions,* and second, *special proceedings.* Section 22 defines an *action* to be an ordinary proceeding in a court of justice, by which one party prosecutes another for the enforcement or protection of a right, redress, or prevention of a wrong, or punishment of a public offense. Section 23 defines a special proceeding to be every other remedy except an action. Special proceedings of a civil nature are set forth in part III of the Code of Civil Procedure of California beginning with section 1067. The said Part III enumerates and treats of all *special proceedings,* and the foreclosure of mortgages is not mentioned in the said Part III of the Civil Code of California. Let us examine one by one the several titles. In the first title Part III of the said Code treats of writs of review, mandate and prohibition. In the second title it treats of contesting certain elections. In the third title it treats of summary proceedings, which are confession of judgment without action, submitting a controversy without action, discharge of persons imprisoned on civil process, and summary proceedings for obtaining possession of real property in certain cases, not mentioning mortgages or their foreclosure in any manner whatever. Title IV treats of the enforcement of mechanics', materialmen's and contractors' liens, and liens for salaries and wages, saying nothing whatever of mortgages, or the liens arising therefrom, where that subject would naturally and logically be treated if treated at all. Title V treats of contempts; Title VI, of the voluntary dissolution of corporations; Title VII, of eminent domain; Title VIII, of escheated estates; Title IX, of change of names; Title X, of arbitrations; Title XI, of proceedings in probate courts; Title XII, of sole traders, defining the rights of married women when doing business without the intervention of their husbands; Title XIII, which is the last, treats of the estates of missing persons. Then the foreclosure or execution of mortgages cannot be regarded in

California as a *special proceeding* but is clearly considered and treated as an *action* or *ordinary proceeding.*

Not only does this omission to place actions for the foreclosure of mortgages under the title of special proceedings in the California Code show that an improper view of this question has been taken in the opinion adhered to by a majority of the court, but the California Code itself distinctly and unequivocally classifies such actions among the ordinary actions and not among special or summary proceedings as is claimed. Nothing more is necessary than a reference to sections 726, 727, 728 and 729 of the Code of Civil Procedure of California, which constitutes chapter first of Title X of the said Code, which title treats of "actions in particular cases" corresponding with Title XI in our Code of Civil Procedure. The case of *Rowe* v. *Blake,* 99 Cal. 167, referred to in a preceding paragraph, was itself an action for the foreclosure of a mortgage brought under the California Code. In the opinion on p. 170 reference is made to the definition of an *action* given in section 22 of the California Code of Civil Procedure. This settles the question in California and in favor of the proposition which I have announced.

Moreover, in the Code of Civil Procedure of Idaho actions for the foreclosure of mortgages are placed among those classified as ordinary actions, the same as in California, as will be seen by a reference to section 3331, 3332, 3333, and 3334 of the said Code of Civil Procedure. Only four sections in each of these codes have been devoted to this subject of the foreclosure of mortgages, and they treat of the particular manner in which the funds should be disposed of, and it was not deemed necessary to transfer these sections to our Code for the obvious reason that actions of this kind, in so far as the trial of cases is concerned, were not dissimilar in any respect from ordinary actions for the collection of other debts.

So we find that the execution or foreclosure of mortgages is not included within the definition of special proceedings

under the Code of Civil Procedure of California, and such execution or foreclosure falls within an ordinary action as defined by legal lexicographers generally and all the writers on the subject. Thus the argument sought to be based on the language of section 22 of the California Code of Civil Procedure falls of its own weight, and in its ruin destroys the entire structure erected thereon.

But it is still very earnestly urged, aside from the argument drawn from the California Code, that the matter of mortgage foreclosure under the Spanish law was in the nature of special proceedings, and that therefore it will not be considered as having been merged in or repealed by our Code of Civil Procedure, without some special proceedings, as well as the general methods of procedure. We find this question specifically answered in section 50 of the Code of Civil Procedure, which provides that:

"The word 'action' as used in this title is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature."

This section demonstrates beyond all reasonable possibility of doubt, that it was the intention of the Legislature that the form of civil action provided for in the Code of Civil Procedure should cover not only proceedings in the nature of a special proceeding, but that the old system of mortgage foreclosure and execution would fall within this designation of a special proceeding.

Another section of the Code of Civil Procedure, which clearly indicates the intention of the Legislature, is section 288, which reads as follows:

"The court may, by injunction, on good cause shown, restrain the party in possession from doing any act to the injury of real property *during the foreclosure of a mortgage thereon;* or, after a sale on execution before a conveyance."

This section establishes a new and complete remedy for

the protection of the mortgaged property, while the mortgage is being foreclosed, and specifically recognizes the fact that the execution sale shall be made in pursuance of said foreclosure, which method is entirely different in every respect from the old Spanish procedure, and it is clear from the language of this section also that the foreclosure proceedings of the Mortgage Law and its Regulations were entirely superseded thereby and thenceforth it was necessary to take action in accordance with the provisions of the present Code of Civil Procedure.

Many other inconsistencies and contradictions between the Spanish Mortgage Law and the American Code of Civil Procedure could be found if it were necessary to the determination of this question. But a sufficient number has already been pointed out to indicate the evident intention of the Legislature to provide by the Code of Civil Procedure, a method for all proceedings in actions of a civil nature in the courts of Porto Rico, including the proceedings for the foreclosure of mortgages. And the enactment of the Code of Civil Procedure, even though the repealing clause does not refer specifically to the Mortgage Law, nevertheless constitutes a repeal of so much of the said law as is in conflict with the said Code. The intention of the Legislature in providing another system of civil procedure is the last and best evidence of its intention to supersede and replace every existing method of civil procedure and every special proceeding of a civil nature, therefor existing.

It is contended also that general laws will not repeal by implication those which are special or local in their character. As a general proposition this is entirely correct. This is a principle of American jurisprudence set forth by Sutherland in section 157 of his work on statutory construction, on page 211. But the repeal which section 361 of the Code of Civil Procedure effects of certain portions of the Mortgage Law and its Regulations is not accomplished by implication. Such a repeal is direct, and covers all parts of the Mortgage Law,

as well as any other law which is inconsistent or in conflict with the repealing act. When a code uses language like this, it cannot be said or maintained that the repeal is by implication. (Sutherland on "Statutory Construction," sec. 137.) Nor is the Mortgage Law a special statute as, that term is used in American Law. The distinction between general and special statutes is sharply drawn in American jurisprudence, and is derived from the English law. General statutes as is held in the American jurisprudence, affect the whole community, or large and important sections thereof, the interests of which may be identical with the whole body. Special statutes relate to private interests, and deal with the affairs or persons, persons or classes, which are not of a public character. (2 Bouvier's Law Dictionary, 1032.) The Mortgage Law affects the entire population of this Island and every foot of soil within its area, and is consequently essentially and clearly a general statute, and liable to be repealed like any other such statute.

It is a well-established principle in our jurisprudence, recognized in numberless judicial decisions, that where a statute is designed to create a new and independent system, whether in regard to procedure, taxation, revenue, or other matters, and to dispose of the whole subject under consideration by the Legislature, it becomes the only law on the subject, and, even without an express repealing clause, it displaces and nullifies the old rules and statutes and they remain thereafter entirely abrogated. This prinicple has been almost universally applied to codes and revisions. The writer in delivering the opinion of the Supreme Court of Montana, nearly twenty years ago in the case of *Lane* v. *Missoula County,* 6 Mont., 473, discusses the rule applicable to conflicting statutes and the construction which should be given to them as to repeals and reference is made thereto. Many authorities are there collated which are equally applicable to the case at bar, The principles governing that case should be followed here

and now. Reference may also be made to the following authorities which will throw search-lights on this subject: Sutherland on Stat. Cons., secs. 154, 155 and 156; 23 American & Eng. Encyc. of Law, p. 487; *Tracy* v. *Tuffly,* 134 U. S., 223; *Cooke Co. Natl. Bank* v. *United States,* 107 U. S., 451; *King* v. *Cornwell,* 106 U. S., 396; *Murdock* v. *Memphis,* 87 U. S., 617; *United States* v. *Tynen,* 78 U. S., 88; *State* v. *Conkling,* 19 Cal., 510; *Sacramento* v. *Bird,* 15 Cal., 294; *Pierpont* v. *Cranch,* 10 Cal., 316; *Fayette Co.* v. *Faires,* 44 Tx., 517; *Rogers* v. *Watrons,* 8 Tx., 65; *Bryan* v. *Sundberg,* 5 Tx., 423; *Bartlett* v. *King,* 7 Am. Dec., 99; 12 Mass., 536; *Thorpe* v. *Schooling,* 7 Nev., 17; *Potter* v. *Dwarris* on Statutes, 154.

It is claimed further by the supporters of the old method of procedure that our Code of Civil Procedure was not intended for general purposes, and therefore could not be held to modify or abrogate the special statute known as the Mortgage Law and the Regulations for its enforcement.

The intention of a statute is ordinarily derived from its title, and in some of the States, if not all, there are constitutional provisions which require that a statute shall have but one subject, and that shall be expressed in its title; and many statutes have been held unconstitutional for noncompliance with such an organic rule. What is the title of our Code of Civil Procedure? We will see by a reference to page 190, Laws of 1904, that it is "An Act to establish a Code of Civil Procedure in Porto Rico." This shows what was the intention of the Legislature in the premises. The members of that body are presumed to have intended exactly what those words ordinarily and fairly mean. Now then what is a *code?* That standard work, so often referred to, Bouvier's Law Dictionary, in the first volume on page 337, defines a code to be "A body of law established by the legislative authority of the State, and designed to regulate completely, so far as a statute may, the subject to which it relates." Then of course this act was intended to establish a complete system of procedure and

to regulate that subject in all its branches, applying its provisions as well to mortgages as to any other class of debts, and there is no reason whatever for excepting such matters from the operation of the complete system which the Legislature undertook to establish. But let us examine the definition of the word *procedure* as given by the same eminent legal authority. In the second volume of his dictionary on page 764 Mr. Bouvier defines the word procedure to mean: "The methods of conducting litigation and judicial proceedings. It might be termed, by way of illustration, the mechanism of the law as distinguished from jurisprudence, which is the science of the law."

Then, if Mr. Bouvier understands the force of the language which he is using we may safely conclude that the Legislature of Porto Rico intended by this act to regulate the mechanism of the law in so far as it relates to civil actions or civil proceedings in the courts; among others, the collection of debts, whether secured by mortgage or not.

As I read the authorities, I must say that it is as clear to my mind as the noonday sun is to my eyes, that the Code of Civil Procedure was intended for general purposes, being a complete system, enacted by proper legislative authority, to govern civil proceedings in courts of justice, that it abrogated all the provisions of the mortgage law and of the regulations for its enforcement which were intended for the foreclosure of the mortgage and a sale of the property mortgaged, whether such provisions were deemed to have been contained in a special statute or not. The late system supersedes and abrogates entirely the former, according to the general principles of jurisprudence hereinbefore enunciated. (*Lyddy* v. *Long Island City,* 104 N. Y., 219; and other cases already cited.)

But the proposition has been advanced by some very respectable persons, learned in the law, in connection with this matter, that the laws on this subject might be so construed that both methods of mortgage foreclosure, that is to say the

ancient Spanish and the modern American, might still remain legal and effective. In my opinion this position is not tenable, because it is the general consensus of judicial authority that the Legislature cannot be supposed to have intended that there should be two distinct and contradictory enactments embracing the same subject-matter in force at the same time. It would be quite unreasonable and might lead to very serious consequence if this court should hold that two distinct, conflicting and absolutely opposite, methods for accomplishing the same objects could be effective at the same time, and that the plaintiff or mortgagee could have the option to determine which method he would adopt and pursue. This principle is well stated by the court of appeals of New York as follows:

"It is not in accordance with settled rules of construction to ascribe to the law-making power an intention to establish conflicting and hostile systems upon the same subject, or to leave in force provisions of law, by which the later will of the legislature may be thwarted and overthrown. Such a result would render legislation a useless and idle ceremony and subject the law to the reproach of uncertainty and unintelligibility." (*Lyddy* v. *Long Island City,* 104 N. Y., 227.)

A revision of a statute in its very nature implies that it displaces the previous system, and is evidently intended as a substitute for it, and prescribes the only rule which should govern in regard to the matter, and such a revision, even by implication, repeals all previous statutes on the same subject although there be no repugnance. The reasonable inference from a revision can be no other than that the Legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute being the most recent expression of the legislative will must be regarded as a substitute for all previous enactments, and the only one which is deemed to have the force of law. (Sutherland

on "Statutory Construction," section 154; *Sacramento* v. *Bird,* 15 Cal., 294; *State* v. *Conkling,* 19 Cal., 510.)

Then according to my views of the jurisprudence applicable to this case, sections 128, 129, 130, 131, 132 and 133 of the Mortgage Law, treating of the judicial procedure relating thereto, and sections 169 and 170 of the Regulations for the enforcement of the said statute and any other sections of the said law of, or said regulations of, like import, have been repealed by the Code of Civil Procedure and all proceedings for the foreclosure of mortgages must be by appropriate actions in accordance with the last-named Code.

If it is necessary to modify the opinions of this court heretofore rendered in order to reach a correct decision of this case, by all means let them be modified, or if necessary overruled. Error can never become truth by being persisted in; if the wrong path has been followed let us retrace our steps, before we are lost in the labyrinth of fallacy; let us dare to do right.

Such being my views in regard to the questions presented in this case, I am constrained to dissent from the opinion of the majority of my colleagues, and to hold that the judgment of the court below ought to be in all things affirmed.